Filed 5/21/13  Certain Underwriters at Lloyd's of London v. Bart Enterprises CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for  B publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, ETC.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>BART ENTERPRISES INTERNATIONAL, LTD.,<br><br>    Defendant and Respondent.<br>_____<br>BART ENTERPRISES INTERNATIONAL, LTD.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, ETC.,<br><br>    Defendants and Appellants. | B244323<br><br>(Los Angeles County Super. Ct. Nos. BS138092 and BC489098) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed and remanded with directions.

Freeman, Freeman & Smiley, Gerald M. Fisher, Joanne M. Frasca, John D. Van Ackeren, and Robert S. Crowder for Appellants Certain Underwriters at Lloyd's of London.

Gerald Peters; Stolar & Associates and Steven R. Stolar for Respondent Bart Enterprises International.

_____

In these consolidated actions, appellants Certain Underwriters at Lloyd's of London, etc. (Underwriters) appeal from the trial court's order denying their petitions to compel arbitration pursuant to Code of Civil Procedure section 1281.2[1] and the terms of a marine insurance policy issued to respondent Bart Enterprises International, Ltd. After the insured property was allegedly stolen in transit, a dispute arose between the parties over the actual value of the property and the proper method of valuation under the policy. Underwriters filed a petition to compel an appraisal of the value of the property pursuant to an arbitration clause in the policy. In response, Bart filed a declaratory relief action seeking an order that the policy was a valued policy under the Insurance Code and that the valuation stated in the policy was conclusive between the parties in the adjustment of the loss.[2] The trial court denied Underwriters' petitions to compel arbitration, finding that the dispute about whether the policy was a valued or open policy was the proper subject of an action for declaratory relief. We conclude that the trial court should have granted the petitions, and pursuant to section 1281.2, subdivision (c), exercised its discretion to decide whether to stay either the judicial or appraisal proceedings. We therefore reverse and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     Insurance Policy Issued by Underwriters to Bart

Bart is a Bahamian company solely owned and controlled by Guillermo Bakula. Bart owned a master tape video library of footage featuring performances by a Latin astrologer and psychic, Walter Mercado. Bart was in the business of licensing the video

---

[1]     Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

[2]     Under the Insurance Code, "[a] policy is either open or valued." (Ins. Code, § 410.) "An open policy is one in which the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss." (Ins. Code, § 411.) "A valued policy is one which expresses on its face an agreement that the thing insured shall be valued at a specified sum." (Ins. Code, § 412.)

library for use in Latin America and parts of the United States. Between 1995 and 2005, Bart averaged about $1.8 million in annual gross revenue, primarily from this business venture.

In 2008, Bart entered into license agreements with a company called Bakus International, Inc. which was owned by Salvador Aristides.[3] The licenses granted Bakus the exclusive right to use the video library over a twenty-year period in exchange for Bakus's promise to pay Bart $50,134,275 in 72 monthly installments. The $50,134,275 in licensing fees were based on an hourly rate multiplied by the number of tape hours to be used, as agreed upon by Bart and Bakus. The license agreements required Bakus to provide a standby letter of credit as security for the payments owed to Bart.

On May 11, 2010, Bart purchased a marine insurance policy from Underwriters to insure the video library against risk of loss or damage during its transit from Miami, Florida to Los Angeles, California. The policy included a provision entitled "Basis of Valuation" which stated as follows: "[$]8,500 per tape hour for U.S.A. and [$]37,400 per tape hour for all other parts of the World." The policy also included a separate provision entitled "Sum Insured" which listed the following amount: "[$]50,134,275." The figures set forth in the "Basis of Valuation" and "Sum Insured" provisions were based solely on representations made by Bart via its chain of brokers and were not independently verified by Underwriters prior to issuing the policy.

The policy contained an "Arbitration" clause which provided as follows: "In the event that the Assured and the Underwriters fail to agree as to the amount of loss or damage, the same shall be ascertained by two competent and disinterested Appraisers, the Assured and the Underwriters each selecting one, and the two so chosen shall first select a competent and disinterested Umpire. The Appraisers together shall then estimate and appraise the loss stating separately the sound values and damage, and failing to agree,

---

[3] Although the license agreements stated that Bakus was located in Santiago, Chile, Underwriters later learned that Bakus had never maintained an office at that location nor been licensed to do business at that location under Chilean law.

shall submit their differences to the Umpire. The award in writing of any two out of those three shall determine the amount of the loss. The Assured and the Underwriters shall pay the Appraisers respectively selected by them and shall bear equally the expense of the Appraisal and Umpire." The policy also included the following "Misrepresentation and Fraud" clause: "This Insurance shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this Insurance or the subject thereof or in the case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this Insurance or the subject thereof, whether before or after loss."

## II.     Total Loss of Insured Property

On May 18, 2011, a week after the policy was issued, Bart reported that the entire video library had been stolen as it was being transported by truck to Los Angeles. According to Bart, the driver of the truck had stopped at a truck stop in Coachella, California to purchase fuel, eat, and shower. When he left the store located at the truck stop a few hours later, the truck had vanished. Although Bart had hired a private investigator to covertly follow the truck on its cross-country trip, the investigator was not present at the scene of the theft because he had checked into a local motel after the truck stopped in Coachella. The following morning, the investigator located the truck about a mile from the truck stop; all of its contents, including the video library, were missing.

In September 2011, Bart submitted a formal Proof of Loss in which Bakula stated, under penalty of perjury, that the actual cash value of the video library at the time of loss was $75 million. In response to Bart's notification of the loss, Underwriters commenced an investigation of the claim. As part of the investigation, Underwriters' counsel took examinations under oath of various witnesses, including Bakula, his bookkeeper, Aristides, the truck driver, and the private investigator. Underwriters' investigation showed that, at the time Bart made representations about the value of the video library, its licensee, Bakus, lacked any apparent financial ability to pay the license fees totaling $50,134,275 and had made no arrangements to obtain the requisite standby letter of credit

4

securing the payments owed to Bart. Underwriters also retained an economist and valuation expert, Andrew Safir, to confirm the amount of loss claimed by Bart by determining the actual cash value of the missing video library. After reviewing the testimony and other evidence obtained by Underwriters, Safir concluded that the actual cash value of the video library was not more than $1 million.

## III. Underwriters' Demand for an Appraisal

In May 2012, Underwriters made a written demand for an appraisal to determine the actual value of the claimed loss pursuant to the arbitration clause in the policy. Underwriters indicated they were invoking the arbitration clause because there appeared to be a material difference between the commercial value of the video library, as determined by their valuation expert, and the value represented to Underwriters by Bart. In its written response, Bart asserted that the policy was a valued policy under Insurance Code section 412 and that Underwriters were bound by the "Sum Insured" value stated in the policy because there was a total loss of the video library. Bart refused to arbitrate the parties' dispute unless the appraisal was limited to the number of tape hours stolen rather than the value of the stolen tapes.

## IV. Civil Actions Filed by Underwriters and Bart

In June 2012, Underwriters filed a verified petition to compel arbitration pursuant to sections 1281.2 and 1281.6 (Los Angeles County Superior Court Case No. BS138092). In their petition, Underwriters alleged that a dispute had arisen between the parties about the value of the claimed loss and that Bart had refused to arbitrate the dispute through an appraisal. Underwriters sought an order compelling Bart to participate in an appraisal of the actual value of the insured property in accordance with the arbitration clause in the policy.

In July 2012, Bart filed a verified response to the petition and a separate action against Underwriters for declaratory relief (Los Angeles County Superior Court Case No. BC4898098). Bart requested a declaratory judgment that (1) the policy was a valued policy within the meaning of Insurance Code section 412, and (2) each tape hour lost be

valued at a rate of $8,500 for the United States and $37,400 for the rest of the world as the conclusive valuation between the parties pursuant to Insurance Code section 1987. Bart also sought an order prohibiting any arbitration until the issues raised in its declaratory relief action had been resolved by the court.

In August 2012, Underwriters filed a second verified petition to compel arbitration, and moved to stay the declaratory relief action pending completion of an appraisal pursuant to section 1281.4. Underwriters also filed a motion to consolidate the two actions for all purposes based on their common issues of law and fact.

## V.     Trial Court's Ruling

On September 24, 2012, the trial court heard Underwriters' petitions to compel arbitration, and its motions to stay and to consolidate. On October 1, 2012, after taking the matter under submission, the trial court issued a minute order granting the motion to consolidate, but denying both petitions to compel arbitration. With respect to the petitions to compel arbitration, the minute order stated as follows: "The question is: Is the coverage 'valued or an open policy'? [¶] The court finds it is the proper subject of a declaratory relief action." On that basis, the trial court also found that the motion to stay was moot. Underwriters filed a timely appeal from the trial court's order.

## DISCUSSION

Underwriters contend that the trial court erred in denying their petitions to compel arbitration because they proved the existence of a valid agreement to arbitrate the parties' dispute about actual value and none of the statutory exceptions to arbitration set forth in section 1281.2 apply. Bart asserts that the trial court's ruling was correct because the parties' dispute about the proper method of valuation under the policy is not subject to the arbitration provision and the resolution of the coverage dispute may render an appraisal of the actual value of the property unnecessary under section 1281.2, subdivision (c).

6

## I. General Law Governing Arbitration

"When the parties to an arbitrable controversy have agreed in writing to arbitrate it and one has refused, the court, under section 1281.2, must ordinarily grant a petition to compel arbitration." (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26, fn. omitted.) Section 1281.2 provides, in pertinent part, that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," unless one of three enumerated exceptions applies. Once the existence of a valid arbitration clause has been established, "[t]he burden is on 'the party opposing arbitration to demonstrate that [the] arbitration clause *cannot* be interpreted to require arbitration of the dispute.'" (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406.)

"California courts have uniformly acknowledged that there is a strong public policy in favor of arbitration. [Citations.]" (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512; see also *Wagner Construction Co. v. Pacific Mechanical Corp.*, *supra*, 41 Cal.4th at p. 25 [arbitration statutes "reflect a '"strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution"'"].) Consistent with this policy, any "'doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration.'" (*Suh v. Superior Court*, *supra*, at p. 1512; see also *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 687 ["California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration"].) On the other hand, "'[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate.'" (*Titolo v. Cano* (2007) 157 Cal.App.4th 310, 317.)

"In general, '[t]here is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo

7

standard of review is employed. [Citations.]' [Citation.]" (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406 (*Laswell*).) Whether a statutory exception to arbitration applies under section 1281.2 is ordinarily a matter of law subject to de novo review. (*Ibid.*; *RN Solutions, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1519 (*RN Solutions*); *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1283 (*Rowe*).)

## II. Insurance Appraisals are a Form of Arbitration

"An appraisal provision in an insurance policy constitutes an agreement for contractual arbitration. [Citations.]" (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1093 (*Doan*); see also *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 ["[a]n agreement to conduct an appraisal contained in a policy of insurance . . . is considered to be an arbitration agreement subject to the statutory contractual arbitration law"].) Accordingly, "[a]ppraisal hearings are a form of arbitration and are generally subject to rules governing arbitration." (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031 (*Kacha*); see also *Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498, 1505 (*Devonwood*) ["appraisal award proceedings are subject to the arbitration provisions outlined in the California Arbitration Act"].) However, while "*arbitrators* are frequently, by the terms of the agreement providing for arbitration, . . . given broad powers [citation], *appraisers* generally have more limited powers." (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403 (*Jefferson*).)

Specifically, "'[t]he function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration.'" (*Jefferson*, *supra*, at p. 403; see also *Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1063 (*Safeco*) ["appraisers have the power only to determine a specific question of fact, 'namely, the actual cash value of the insured [item]'"].) It is "'not their function to resolve questions of coverage and interpret provisions of the policy.'" (*Jefferson*, *supra*, at p. 403; see also *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 58-59 (*Kirkwood*) ["[a]ppraisers have no power to interpret the insurance contract

8

or the governing statutes"]; *Doan*, *supra*, 195 Cal.App.4th at p. 1094 ["'[m]atters of statutory construction, contract interpretation and policy coverage are not encompassed within the ambit of [an insurance] appraisal'"].)  Likewise, an appraisal panel generally lacks the authority "to determine whether an insured lost what he [or she] claimed to have lost or something different." (*Safeco*, *supra*, at p. 1065.)  While "an insurer is free to litigate whether the insured has misrepresented what he [or she] lost," issues of fraud or misrepresentation by the insured are "beyond the scope of an appraisal." (*Id*. at p. 1066; see also *Kacha*, *supra*, 140 Cal.App.4th at p. 1033.)

**III.     Appraisal Proceedings May be Stayed under Section 1281.2, Subdivision (c)**

Although section 1281.2 generally requires a trial court to order the parties to arbitrate a dispute once the existence of a valid arbitration agreement covering that dispute is established, subdivision (c) of the statute grants the court discretion to stay an arbitration proceeding.  Specifically, section 1281.2, subdivision (c) provides:  "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

Under this statutory provision and the case law construing it, trial courts have discretion to sever arbitrable claims from nonarbitrable claims and to stay either proceeding pending the outcome of the other.  (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977-978 (*Acquire II*); *RN Solutions*, *supra*, 165 Cal.App.4th at pp. 1521-1522.)  An insurance appraisal proceeding also may be stayed pursuant to this discretionary authority to permit the resolution of policy interpretation or coverage issues.  (*Doan*, *supra*, 195 Cal.App.4th at p. 1100-1101; *Kirkwood*, *supra*, 193 Cal.App.4th at p. 62-63.)  When section 1281.2, subdivision (c) applies, the trial court's decision as to whether to stay the arbitration or judicial proceedings is reviewed for an

abuse of discretion. (*Acquire II*, *supra*, at p. 971; see also *Laswell*, *supra*, 189 Cal.App.4th at p. 1406 ["trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse"]; *Rowe*, *supra*, 153 Cal.App.4th at p. 1283 [trial court's "decision as to how to proceed in a situation governed by section 1281.2, subdivision (c), is reviewed for an abuse of discretion"].)

In *Doan*, *supra*, 195 Cal.App.4th 1082, the plaintiff obtained a property insurance policy from State Farm which contained a valuation appraisal clause. After the insured's home and its contents were destroyed by a fire, the parties were unable to agree on the value of the lost personal property. Acting on behalf of himself and other State Farm policyholders in California, the insured filed a putative class action for declaratory and other relief, alleging that State Farm's method of calculating depreciation based solely on the age of the insured property violated the terms of the policy and the Insurance Code. (*Id*. at pp. 1087-1089.) The trial court sustained State Farm's demurrer to the complaint without leave to amend on the ground that the insured had failed to first submit his valuation dispute to an appraisal. (*Id*. at p. 1090.) The Court of Appeal reversed, holding that the insured could pursue his cause of action for declaratory relief because the statutory and contractual interpretation issues raised in his action were beyond the limited authority of an appraisal panel to decide. (*Id*. at p. 1098.)

Turning to the question of whether the interpretation issues or the valuation issue should be resolved first, the appellate court in *Doan* concluded that, under section 1281.2, subdivision (c), "insurance appraisals – like arbitration proceedings – may be stayed pending the resolution of legal issues that lie outside the appraiser's jurisdiction." (*Doan*, *supra,* 195 Cal.App.4th at p. 1101.) The court further observed that "it is particularly appropriate to do so where a determination of the legal issues may obviate the need for an appraisal or inform the appraisal process." (*Ibid*.) Given the insured's allegations, a judicial declaration that State Farm's depreciation practice did not violate the Insurance Code or the policy could make an appraisal unnecessary. (*Id*. at p. 1104.) Because it appeared the trial court was unaware of its discretionary authority under section 1281.2,

10

the matter was remanded to the trial court with directions to "exercise its discretion to consider whether and when declaratory relief should be granted." (*Id.* at p. 1105.)

Similarly, in *Kirkwood*, *supra*, 193 Cal.App.4th 49, the plaintiff brought a putative class action for declaratory and other relief against his insurer, alleging that the insurer's use of a standardized depreciation schedule that did not consider the physical condition of the insured property at the time of loss violated the Insurance Code as well as the parties' contract. The trial court denied without prejudice the insurer's motion to compel arbitration. (*Id.* at pp. 55-56.) The Court of Appeal affirmed, agreeing with the trial court's conclusion "an appraisal was not mandated 'right now' because the declaratory relief cause of action asked the court to make a declaration that [the insurer] was misconstruing [the Insurance Code]." (*Id.* at p. 57.) As the appellate court explained, "notwithstanding that the parties do dispute the actual cash value of the subject property, an actual controversy exists . . . about the proper interpretation of [the statute] within the context of adjusting a property loss claim, thus entitling [the insured] to declaratory relief. . . . [¶] The contractual and statutory interpretation issues presented in the complaint are not encompassed within the appraisal process . . ., and therefore appraisal was properly deferred in this case." (*Id.* p. 62.)

In response to the insurer's argument that an appraisal was necessary to determine whether the insured was paid less than the actual cash value of his property and thus had standing to seek declaratory relief, the court in *Kirkwood* reasoned as follows: "A judicial declaration that [the insurer's] interpretation of [the Insurance Code] and the policy *does not* violate the statute would be the end of the line: no appraisal would be necessary, and insureds such as Kirkwood would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior." (*Id.* at p. 63.) Although the appellate court did not specifically refer to section 1281.2, subdivision (c) in its decision, it noted that the denial of the "motion to compel an appraisal *without prejudice*, as a matter of sequencing . . . does not run afoul of [the Insurance Code] or the arbitration statutes." (*Id.* at 60.)

11

## IV.    Applicability of Section 1281.2, Subdivision (c) to This Case

As in *Doan* and *Kirkwood*, the parties in this case disagree about the underlying nature of their dispute, with Underwriters characterizing it as a valuation dispute about the actual value of the insured property and Bart describing it as a coverage dispute about the proper method of valuation under the policy terms.  The record reflects that the parties' dispute encompasses several distinct but related issues, including the proper interpretation of the policy's valuation provisions, the possible existence of fraud on the part the insured, and the actual value of the lost items.

The record also reflects that the parties essentially concur as to which type of proceeding (judicial or appraisal) must ultimately resolve each of these issues.  First, the parties agree that any dispute about the proper method of valuation under the terms of the policy and the Insurance Code must be determined by the trial court.  Second, the parties agree that any dispute about whether Bart materially misrepresented the value of the video library in applying for insurance must also be determined by the trial court.  Finally, the parties agree that, to the extent Underwriters are not bound by the valuation method set forth in the policy, any dispute about the actual cash value of the video library must be determined by an appraisal panel pursuant to the policy's arbitration clause.  Where the parties diverge, however, is in their respective arguments as to which of these issues must be decided first.  The resolution of this appeal accordingly turns on the applicability of section 1281.2, subdivision (c).

Bart argues that section 1281.2 subdivision (c) applies primarily because the parties' dispute about the proper method of valuation under the Insurance Code and the policy terms does not fall within the scope of the arbitration clause and the trial court's resolution of this statutory and contractual interpretation issue may render an appraisal unnecessary.  According to Bart, if the trial court determines that the policy is a valued policy within the meaning of Insurance Code section 412, as Bart contends, then Underwriters will be bound by the "Sum Insured" value of $50,134,275 set forth in the

policy and will not be entitled to an appraisal to determine the actual value of the video library in adjusting the loss.[4]

In contrast, Underwriters assert that section 1281.2, subdivision (c) does not apply because the parties' dispute about the actual value of the insured property falls squarely within the arbitration clause, and none of the non-arbitrable issues to be decided by the trial court will make an appraisal unnecessary. According to Underwriters, if the trial court determines that the policy is an open policy within the meaning of Insurance Code section 411, as Underwriters contend, then the value of the video library will have to be determined by an appraisal panel pursuant to the arbitration clause in the policy. On the other hand, if the trial court determines that the policy is a valued policy within the meaning of Insurance Code section 412, then Underwriters will be entitled to rescind the policy if Bart's valuation in obtaining insurance was either fraudulent or materially misrepresented. While Underwriters acknowledge that the trial court must ultimately decide whether there was fraud or misrepresentation by Bart, they nevertheless argue that the resolution of such issue will first require a determination of the actual value of the video library, which must be made in an appraisal proceeding. Underwriters therefore reason that, because the trial court could not have found that resolution of the issues raised in Bart's declaratory relief action might render an appraisal unnecessary, the court lacked any discretion to deny or delay an appraisal under section 1281.2, subdivision (c).

We agree with Underwriters that the trial court did not have discretion under section 1281.2, subdivision (c) to *deny* their petitions to compel an appraisal outright

_____

[4]     Bart also argues that, even if the trial court determines that the policy is not a valued policy, the court may not order the parties to participate in an appraisal until it decides the meaning of the ambiguous term "sound value," as used in the arbitration clause. Underwriters asks this court to reject any argument about the term "sound value" or "sound value policy" because it was not raised before the trial court and Underwriters did not have an opportunity to present evidence or argument to refute it. Whether there is an additional disputed issue about the term "sound value" is not dispositive to our analysis, and accordingly, we need not consider it on appeal. The relevance of any such issue may be addressed to the trial court in the first instance on remand.

13

because they established the existence of a valid agreement to submit any dispute about the amount of loss or damage claimed by Bart to a panel of appraisers. The mere presence of non-arbitrable statutory or contractual interpretation issues in Bart's declaratory relief action does not, in and of itself, vitiate Underwriters' right to an appraisal to determine the actual value of the claimed loss. (*Acquire II*, *supra*, 213 Cal.App.4th at p. 977 ["when parties who agree to arbitration assert both arbitrable and non arbitrable claims, section 1281.2(c) does not allow the court to deny arbitration"]; *RN Solutions*, *supra*, 165 Cal.App.4th at p. 1521 [where complaint alleges arbitrable and non-arbitrable claims, trial court only has "discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c)"].) Underwriters also demonstrated that there is a present controversy over the actual cash value of the video library; if Underwriters are not bound by the "Sum Insured" amount stated in the policy, then the dispute about the actual value of the property must be resolved in an appraisal.[5] Accordingly, the trial court should have granted Underwriters' petitions to compel an appraisal of the value of the insured property pursuant to the policy's arbitration clause.

However, Underwriters' assertion that the trial court did not have any discretion under section 1281.2, subdivision (c) to *stay* the appraisal proceeding pending resolution of the non-arbitrable issues raised in the declaratory relief action, including any issues of fraud or misrepresentation by Bart in applying for insurance, is incorrect. It is true that a misrepresentation or concealment of a material fact in an insurance application entitles the insurer to rescind the policy and establishes a complete defense to an action on the policy. (Ins. Code, §§ 331, 359; *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 286-287; *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 191-192.) An appraisal of actual value of the video library

---

5       Although Bart stated in a footnote in its brief that "there is no present dispute" about the value of the video library because that "issue has not ripened," it conceded that if the trial court were to resolve the statutory and contractual interpretation issues in Underwriters' favor, the court "can then order the dispute to arbitration/appraisal" pursuant to the arbitration clause in the policy.

14

is not a "necessary prerequisite" to a judicial determination of whether there was a fraudulent overvaluation by Bart. The trial court would not necessarily have to determine the actual cash value of the property at the time of loss to decide whether Bart made a material misrepresentation as to the value in applying for insurance. The court simply would have to determine whether the value of the property was less than the $50,134,275 sum claimed by Bart in his application, and if so, whether Bart's valuation was based on a misrepresentation or concealment of a material fact. If the court decided, based on the evidence presented by the parties, that Bart materially misrepresented the value of the video library in applying for insurance, then Underwriters would be entitled to rescind the policy and would have a complete defense to the declaratory relief action. Under such circumstances, an appraisal of the actual value of the loss claimed by Bart would not be necessary.

Because the resolution of the non-arbitrable issues raised in Bart's declaratory relief action could make an appraisal unnecessary, the trial court retained discretion under section 1281.2, subdivision (c) to decide whether to stay an order to participate in an appraisal proceeding pending a judicial determination of those issues. Any determination about the proper sequence of the proceedings rests in the sound discretion of the trial court.[6]

In this case, the trial court never exercised its discretion to decide whether to stay either the judicial or appraisal proceedings because it denied Underwriters' request for an

_____

[6]     In support of their argument that an appraisal is required before the trial court decides the issue of fraud, Underwriters primarily rely on federal decisions holding that an insured must exhaust the appraisal remedy in an insurance policy before bringing a civil action based on alleged unlawful conduct by an insurer. (See *Enger v. Allstate Ins. Co.* (9th Cir. Dec. 28, 2010, No. 09-17785) 2010 U.S.App. LEXIS 26835; *Pivonka v. Allstate Ins. Co.* (E.D.Cal. Dec. 12, 2011, No. 2:11-cv-1759-GEB-CKD) 2011 U.S.Dist. LEXIS 142770; *Garner v. State Farm Mutual Automobile Ins. Co.* (N.D.Cal. June 30, 2008, No. C 08-1365 CW) 2008 U.S.Dist. LEXIS 120263.) However, none of the federal cases cited by Underwriters considered section 1281.2, subdivision (c) or the trial court's discretionary authority to stay, rather than deny, an appraisal pending the resolution of other issues not subject to the appraisal proceeding.

appraisal outright.  For the reasons stated above, that ruling was erroneous.  We therefore reverse the order denying Underwriters' petitions to compel arbitration and remand the matter to the trial court for entry of a new order granting the petitions pursuant to section 1281.2 and the arbitration clause in the policy.  On remand, the trial court must decide, pursuant to section 1281.2, subdivision (c), whether to stay the arbitration order pending the resolution of any non-arbitrable issues raised in the declaratory relief action.

## DISPOSITION

The order denying Underwriters' petitions to compel arbitration is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.  Underwriters shall recover their costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.


16