[No. A128131. First Dist., Div. Four. Feb. 28, 2011.]

DOUGLAS KIRKWOOD, Plaintiff and Respondent, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION
INTER-INSURANCE BUREAU, Defendant and Appellant.

52

Counsel

Barger & Wolen, Steven H. Weinstein and Peter Sindhuphak for Defendant and Appellant.

Kerr & Wagstaffe, Michael von Loewenfeldt and Ivo Labar for Plaintiff and Respondent.

Opinion

REARDON, J.—Insurance Code[1] section 2071 calls for an appraisal process to resolve disputes between the parties to a standard form fire insurance policy over the actual cash value of property loss claims. However, the appraisal panel's power is restricted to the factual task of valuing the items of property submitted for appraisal. Matters of statutory construction, contract interpretation and policy coverage are not encompassed within the ambit of a section 2071 appraisal.

In this action for declaratory and other relief, respondent Douglas Kirkwood has asserted that appellant California State Automobile Association Inter-Insurance Bureau (CSAA) is improperly interpreting and applying the 2004 amendments to section 2051, which set out the precise method of determining actual cash value of lost or injured property under an open policy of fire insurance. The trial court denied, *without prejudice*, CSAA's motion to compel appraisal, reasoning that Kirkwood had properly invoked its declaratory relief powers to resolve a matter that was outside the scope of a statutory and contractual appraisal. CSAA appeals the order denying its motion to compel appraisal. We conclude the trial court properly denied the motion, and accordingly affirm the order.

## I. BACKGROUND

A. *Legal Underpinnings*

In California, the Insurance Code establishes the terms of standard fire insurance policies. Such policies "shall be on the standard form . . . ." (§ 2070.) Section 2071 details the standard provisions. The standard insuring clause calls for coverage "to the extent of the *actual cash value* of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss . . . ." (§ 2071, italics added.)

---

[1] Unless noted otherwise, all statutory references are to the Insurance Code.

In 2004, with the passage of Assembly Bill No. 2962 (2003–2004 Reg. Sess.) introduced as part of the Homeowner's Bill of Rights following the 2003 wildfires in Southern California, section 2051 was amended to state exactly how the measure of actual cash value should be determined. (See Stats. 2004, ch. 605, § 2, p. 4763.) Section 2051, subdivision (b) (section 2051(b)) now reads, in part: "(b) Under an open policy that requires payment of actual cash value, the measure of the actual cash value recovery, in whole or partial settlement of the claim, shall be determined as follows: [¶] . . . [¶] (2) In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured *less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less.*" (Italics added.)

Implementing regulations promulgated thereafter now mandate that the insurer *itemize, justify and fully explain* all adjustments to the amount claimed, including for depreciation, and that depreciation must be attributable to the condition and age of the property: "When the amount claimed is adjusted because of . . . depreciation . . . , all justification for the adjustment shall be contained in the claim file. Any adjustments shall be discernable, measurable, itemized, and specified as to dollar amount, and shall accurately reflect the value of the . . . depreciation . . . . *Any adjustments for . . . depreciation shall reflect a measurable difference in market value attributable to the condition and age of the property* and apply only to property normally subject to repair and replacement during the useful life of the property. The basis for any adjustment shall be fully explained to the claimant in writing." (Cal. Code Regs., tit. 10, § 2695.9, subd. (f), italics added.)

Section 2071 specifies several additional provisions pertinent to this appeal. The paragraph entitled "Requirements in case loss occurs" requires the insured to give the insurer written notice of loss, and furnish "a complete inventory" of the destroyed property, "showing in detail quantities, costs, actual cash value and amount of loss claimed . . . ." In the event the insured and insurer disagree as to the actual cash value or amount of loss, the "Appraisal" provision[2] requires the parties to take part in an *informal*

---

[2] This provision in the standard form policy set forth in section 2071 states in part: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire . . . . Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately

appraisal proceeding (unless they mutually agree otherwise), in which each party selects a "competent and disinterested appraiser," who in turn selects a "competent and disinterested umpire . . . ." (§ 2071.) The appraisers selected by the parties are required to appraise the loss, "stating separately actual cash value and loss to each item"; if they fail to agree, they submit their differences to the umpire. (*Ibid.*) And finally, the paragraph denoted "Suit" reads: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with . . . ." (*Ibid.*)

## B. *Factual Background*

Kirkwood was insured by CSAA under a homeowners policy. It was an "open" policy in which the value of the covered items was not agreed upon, but was left to be determined following a loss. (§ 411.) The policy provided that CSAA would pay actual cash value or the replacement cost of lost or damaged personal property. In his complaint Kirkwood alleged that on August 21, 2007, his home and personal property were destroyed as the result of a fire. He submitted his personal property claim to CSAA, setting forth a physical depreciation amount based on the actual condition of each item at the time of the loss. CSAA provided Kirkwood with a contents inventory summary, which showed that a blanket depreciation schedule was applied to certain categories of property. For instance, many items were depreciated at 50 to 80 percent, and the depreciation was tied to the age of the item without regard to its condition.

Kirkwood challenged the settlement offer, in particular what he asserted was "excessive depreciation" that was nearly triple what he had calculated, and accused CSAA of violating section 2051(b) (quoted in pt. I.A., *ante*). CSAA responded that it was aware of section 2051, had asked the Department of Insurance for guidelines on how to determine actual cash value using the language of fair and reasonable deduction for physical depreciation, but indicated the department had no guidelines. CSAA stated it did "not believe the code changes the language of the contract between an insured and their carrier."

Thereafter Kirkwood sued CSAA for declaratory relief, breach of contract, bad faith, and violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200). The complaint included Kirkwood's individual claims as

---

actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally."

well as class action allegations, all relating to the assertion that CSAA's use of standardized depreciation schedules to determine depreciation of personal property items ran afoul of California law as well as the parties' insurance contract. The declaratory relief cause of action asserted a present controversy as to whether CSAA violated section 2051(b) and various regulations by depreciating personal property "through a secret, standardized schedule rather than through an examination of the actual physical condition of the property," and whether CSAA was "entitled to conceal its method of depreciation from its insureds." Kirkwood sought "a declaration that defines the rights and obligations under the policy, on behalf of himself and all others similarly situated," and asserted he was entitled to "a judicial determination of the parties' rights and obligations regarding section 2051." The breach of contract cause of action alleged that CSAA breached its obligation under the contracts of insurance with Kirkwood and each class member "by failing to make a 'fair and reasonable' deduction for 'physical depreciation' based upon the condition of the item, by failing to justify the basis for its depreciation, and by failing to properly pay the actual cash value of the lost property as a result of the excessive depreciation determined by CSAA's standardized claims handling procedures."

CSAA demanded that Kirkwood dismiss the lawsuit and proceed with an appraisal. Kirkwood rejected the demand for appraisal, responding that the appraisal provision had no effect on his action because the lawsuit presented questions of law and coverage, and appraisers have no authority to resolve such issues.

Faced with this rejection, CSAA demurred and moved to strike. The court granted and denied in part the motions. CSAA also moved to compel an appraisal pursuant to the appraisal clause in the policy which essentially tracked the standard form provision detailed in section 2071. The trial court denied the motion to compel appraisal, without prejudice, so that CSAA could raise this issue again after the court resolved the issue of interpretation of section 2051(b).

Subsequently, Kirkwood filed a first amended complaint; CSAA again demurred and moved to strike the class allegations. The court sustained (1) CSAA's demurrer to the breach of contract/specific performance claim on behalf of the class, without leave to amend; and (2) the UCL cause of action on behalf of the class, with leave to amend. It denied the motion to strike class allegations to the extent the demurrer rulings did not moot those concerns.

Kirkwood submitted a second amended complaint realleging declaratory relief and UCL causes of action on behalf of the class, as well as individual

breach of contract and breach of the implied covenant of good faith and fair dealing claims. Shortly thereafter this appeal followed.

## II. DISCUSSION

### A. *Introduction*

CSAA is adamant that Kirkwood's action pivots on its purported failure to pay him the full amount of the actual cash value for his personal property, and therefore the dispute is subject to mandatory appraisal under section 2071. Kirkwood insists that the matter hinges on the meaning of section 2051(b) and CSAA's obligations thereunder. Hence, his efforts to obtain declaratory relief as to the correct interpretation of section 2051(b) combined with injunctive relief requiring CSAA to comply with the statute are proper pursuits at this juncture.

We think the trial court was right in its conclusion that an appraisal was not mandated "right now" because the declaratory relief cause of action asked the court to make a declaration that CSAA was misconstruing section 2051(b). Denying the motion to compel appraisal without prejudice, the court was clear: "I don't see how the plaintiff gets out of an appraisal later." In other words, given the limited role of an appraisal, the court essentially bifurcated the case, determining that it should first issue a declaration on the statutory issue, "and then have it inform the appraisal when it goes forward." In short the court ruled that the agreement to arbitrate did not include the threshold contract and statutory interpretation issues, which were beyond the purview of the appraisers. We agree.

### B. *Appraisal Clause; Role of Appraiser*

█ An agreement to conduct an appraisal included in a standard fire insurance policy constitutes an "agreement" within the meaning of Code of Civil Procedure section 1280, subdivision (a),[3] and thus is considered to be an arbitration agreement subject to the statutory contractual arbitration law. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 [98 Cal.Rptr.2d 378].) An appraisal pursuant to section 2071 is deemed an arbitration as a matter of law. (*Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 573 [103 Cal.Rptr.3d 197] (*Mahnke*).) █ Code of Civil Procedure section 1281.2 generally provides that where a party to an arbitration agreement petitions the court with allegations of an agreement to arbitrate a controversy and another party

---

[3] " 'Agreement' [as used in this title] includes but is not limited to agreements providing for valuations, appraisals and similar proceedings . . . ." (Code Civ. Proc., § 1280, subd. (a).)

refuses to arbitrate, "the court shall order [the parties] to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." ■ A party may petition the court to confirm, correct or vacate an appraisal award; the court must confirm unless it corrects and confirms as corrected, vacates the award, or dismisses the proceeding. (Code Civ. Proc., §§ 1285, 1286.)

Once the appraisal provision in an insurance policy is invoked, however, the appraisal process itself is limited. It "shall not include any legal proceeding or procedure not specified under California Insurance Code Section 2071. Nothing [in the regulations] is intended to preclude separate legal proceedings on issues unrelated to the appraisal process." (Cal. Code Regs., tit. 10, § 2695.9, subd. (e).)

■ And, although an appraisal is a special form of limited arbitration, there are significant differences between the powers of an arbitrator and those of an appraiser. An arbitrator's role is closely analogous to that of a judge in a judicial proceeding, "empowered to exercise what are essentially judicial functions." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 909 [30 Cal.Rptr.2d 265, 872 P.2d 1190].) Arbitrators are chosen by the parties to serve as judges to decide the matters submitted to them. (*Ibid.*) Thus, subject to the confines of the arbitration agreement, a private contractual arbitrator normally " 'will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.]' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360 [82 Cal.Rptr.3d 229, 190 P.3d 586].) Further, parties to an arbitration may agree to have the same rights to discovery and deposition as apply in civil court. (Code Civ. Proc., §§ 1283.05, 1283.1, subd. (b).)

On the other hand, section 2071 calls for an informal appraisal proceeding, unless the parties mutually agree otherwise, with no depositions, interrogatories, and the like, no formal rules of evidence, and no court reporter. The direction to maintain informality in appraisal proceedings was inserted into section 2071 in 2001, in response to complaints of insurer abuses after the Oakland hills fire of 1991, the 1994 Northridge earthquake, and the Napa earthquake of 2000. (*Mahnke, supra,* 180 Cal.App.4th at p. 573.) Specifically, it was inserted "[i]n an effort to equalize the positions of insurers and insureds and to streamline the appraisal process by reducing the opportunity for delaying tactics by insurers . . . ." (*Ibid.*; see Stats. 2001, ch. 583, § 4, p. 4765.)

■ Additionally, section 2071 constrains the role of the appraiser to that of appraising "the loss, stating separately actual cash value and loss to each item . . . ." Appraisers have no power to interpret the insurance contract or

the governing statutes. " 'The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.' " (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880] (*Jefferson*); see *Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1032 [45 Cal.Rptr.3d 92].) Under section 2071, an appraiser has authority to determine only a question of fact, namely the actual cash value or amount of loss of a given item. (*Jefferson, supra,* 3 Cal.3d at p. 403.)

## C. *Declaratory Relief Principles*

Code of Civil Procedure section 1060 states: "Any person interested under a written instrument . . . , or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

■ Declaratory relief operates prospectively, serving to set controversies at rest before obligations are repudiated, rights are invaded or wrongs are committed. Thus the remedy is to be used to advance preventive justice, to declare rather than execute rights. (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 360 [15 Cal.Rptr.3d 430].) Declaratory relief serves a practical purpose in stabilizing an uncertain or disputed legal relation, thereby defusing doubts which might otherwise lead to subsequent litigation. (*Ibid.*) The correct interpretation of a statute is a particularly suitable subject for a judicial declaration. (*In re Claudia E.* (2008) 163 Cal.App.4th 627, 633 [77 Cal.Rptr.3d 722].) Resort to declaratory relief therefore is appropriate to attain judicial clarification of the parties' rights and obligations under the applicable law. (*Baxter Healthcare Corp. v. Denton, supra,* 120 Cal.App.4th at p. 362.)

■ The remedy of declaratory relief is cumulative and does not restrict other remedies. (Code Civ. Proc., § 1062.) Moreover, the court's power to render declaratory relief is discretionary, and it may refuse to exercise the power "in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (*Id.,* § 1061.) The mere fact that another remedy is available will not suffice as sufficient grounds for a court to decline a declaration, because declaratory relief is not intended to be exclusive or extraordinary. Rather, it is alternative and optional. (*In re Claudia E., supra,* 163 Cal.App.4th at p. 634.) A court is only justified in refusing a declaration because of the availability of another remedy when it

concludes that more effective relief could and should be obtained by another procedure, and for that reason a declaration will not serve a useful purpose. (*Ibid.*)

D.  *Analysis*

CSAA asserts that section 2071 itself, as well as *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886, 890 [112 Cal.Rptr.2d 304] (*Community Assisting*) and several federal district court opinions, dictate reversal in this case.

First, although section 2071 calls for an appraisal process when the parties fail to agree on the actual cash value, the role of the appraisers is limited to appraising the loss, nothing more. Here, the trial court denied CSAA's motion to compel an appraisal *without prejudice*, as a matter of sequencing, in effect deferring the appraisal until the interpretation issues were resolved. This approach does not run afoul of section 2071 or the arbitration statutes.

Second *Community Assisting* does not mandate an appraisal in the first instance, before the section 2051(b) interpretation issue is laid to rest. There, the plaintiff brought an unfair competition suit against a host of insurance companies, alleging that the defendants' practice of adjusting property loss claims on the basis of replacement cost less depreciation rather than on the basis of fair market value, was unlawful. The court concluded that regardless of how an insurer approached valuation when adjusting a claim, the Legislature provided the statutory remedy of appraisal to which the parties must resort to determine the amount of loss. In light of the appraisal process set forth in section 2071, the plaintiff failed to demonstrate an unlawful or unfair practice. (*Community Assisting, supra*, 92 Cal.App.4th at pp. 893–895.)

Tellingly, at the time *Community Assisting* was decided, the 2004 amendments to section 2051 had not been enacted and thus there was no statutory direction dictating how the insurer was to measure the actual cash value of recovery under an open policy. The *Community Assisting* reasoning that "notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim" (*Community Assisting, supra*, 92 Cal.App.4th at p. 893), section 2071 provides the remedy of appraisal to resolve contested claims, does not help CSAA in the present landscape. The *Community Assisting* court was not asked to consider the availability of declaratory relief to construe the statute and regulation governing depreciation practices under an open policy. Kirkwood has invoked the court's declaratory relief powers, requesting a declaration as to whether CSAA's practice of calculating depreciation based solely on age, and not physical depreciation or actual condition, violates section 2051(b) and companion regulations. This claim is not subject to appraisal.

The trio of federal district court cases relied on by CSAA rests on an overbroad extension of *Community Assisting*, which the trial court rejected. *Goldberg v. State Farm Fire & Casualty Co.* (C.D.Cal., Apr. 5, 2002, No. CV 01-11193 LGB (EX)) 2002 WL 768893 (*Goldberg*) is an unpublished decision that also preceded the 2004 amendments to section 2051(b); it did not involve a request for declaratory relief. There the court rejected the plaintiff insured's argument that his interpretation of contract issue was a task beyond the power of the appraiser to undertake, and dismissed the breach of contract and breach of the good faith covenant claims against the insurer for failure to follow the appraisal procedure. The court interpreted *Community Assisting* as holding that "the *Jefferson* decision was appropriate because the insured went through the appraisal process. [Citation.] The Court reads this as a requirement to give the appraiser the first opportunity to address the valuation issue, and only if the appraiser errs should the issue be brought before a court." (2002 WL 768893 at pp. *3–*4.) *Community Assisting*, a UCL claim case, did not raise breach of contract issues; the court did not hold that even where there is a challenge to interpretation of the insurance contract, an appraisal is mandated in the first instance. Nor did *Jefferson* so hold or imply.

*Garner v. State Farm Mutual Automobile Ins. Co.* (N.D.Cal., June 30, 2008, No. C 08-1365 CW) 2008 WL 2620900 (*Garner*), another unpublished opinion, involved an automobile insurance policy. The plaintiff alleged breach of the insurance policy and the implied covenant of good faith, as well as a violation under the UCL. Recognizing that it was for the court, not an appraiser, to resolve the allegations of regulatory violations, the court in *Garner* nonetheless granted the insurer's motion to compel an appraisal and stay the action, reasoning that the dispute at its core was about the value of the automobile which triggered the appraisal provision. (2008 WL 2620900 at pp. *6–*7.) Significantly, the *Garner* plaintiff did not seek to invoke the trial court's declaratory relief powers.

Finally, in *Enger v. Allstate Ins. Co.* (E.D.Cal. 2009) 682 F.Supp.2d 1094, the plaintiff attacked the insurer for using a standard depreciation table instead of considering the actual condition of lost or destroyed items, and raised claims similar to the instant complaint, including a request for declaratory relief. However, the opinion itself did not discuss the nature of the declaratory relief claim or otherwise delve into the propriety of invoking that relief. Instead, it blindly embraced the reasoning of *Garner* as well as *Goldberg*'s interpretation of *Community Assisting* that the appraisal process must be exhausted before suit may be brought, notwithstanding the plaintiff's contract interpretation claims. (*Enger v. Allstate Ins. Co., supra*, 682 F.Supp.2d at pp. 1098–1099.)

■ These federal cases chart out an overly broad interpretation of *Community Assisting* and do not address the central reality of this case, namely that the trial court determined Kirkwood properly invoked its declaratory relief powers, thereby justifying its nonprejudicial rejection of CSAA's motion to compel appraisal. Notwithstanding that the parties do dispute the actual cash value of the subject property, an actual controversy exists between Kirkwood and CSAA about the proper interpretation of section 2051(b) within the context of adjusting a property loss claim, thus entitling him to declaratory relief. CSAA mistakenly equates the power of appraisers with that of arbitrators, contending that both may interpret statutory rules. This is not the law. California courts have consistently held that an appraisal panel exceeds its authority when it does anything beyond deciding the worth of the property in question. (*Jefferson, supra*, 3 Cal.3d at pp. 402–403 [appraisers exceeded their powers by erroneously deciding question of law, namely meaning of "actual cash value"]; *Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1066 [207 Cal.Rptr. 104] [appraisal panel exceeded its powers by making factual determination that insured lost something other than what he claimed to lose, rather than assessing value to be assigned items described by insured]; *Kacha v. Allstate Ins. Co., supra*, 140 Cal.App.4th at pp. 1030, 1035–1036, 1038 [appraisal award vacated because appraisers exceeded authority by improperly making coverage and causation determinations].)

■ The contractual and statutory interpretation issues presented in the complaint are not encompassed within the appraisal process articulated in section 2071 or the insurance contract, and therefore appraisal was properly deferred in this case. For the same reason, Kirkwood was not in violation of the statutory and contractual provision prohibiting suit absent full compliance with the policy provisions. (§ 2071.) Only the court, not an appraiser, can deliver declaratory relief as to the proper meaning of section 2051 within the context of CSAA's insurance adjusting practices.

■ Moreover, the regulations explicitly document that the section 2071 appraisal procedure does not limit recourse to other remedies. (Cal. Code Regs., tit. 10, § 2695.9, subd. (e) [providing that "separate legal proceedings on issues unrelated to the appraisal process" are not precluded].)

CSAA argues nonetheless that an appraisal is necessary to determine whether the insured has standing to pursue injunctive relief against the insurer, and if there is an actual controversy. In other words, whether an insured proceeds with an action depends on whether the appraisal demonstrates that the insurer's offer was lower or higher than the actual cash value. This argument goes both ways. The result favored by CSAA and the federal district court decisions discussed above bear the real, deleterious consequence of forcing insureds to pay for an appraisal prior to a definitive judicial

declaration establishing the correct legal basis for determining actual cash value. A judicial declaration that CSAA's interpretation of section 2051(b) and its policy *does not* violate the statute would be the end of the line: no appraisal would be necessary, and insureds such as Kirkwood would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior. In our view judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging CSAA's statutory interpretation as reflected in its adjustment policy.

## III. DISPOSITION

We affirm the order denying, without prejudice, CSAA's motion to compel appraisal.

Ruvolo, P. J., and Rivera, J., concurred.

A petition for a rehearing was denied March 24, 2011, and appellant's petition for review by the Supreme Court was denied June 8, 2011, S192157.