*1185 Opinion
BIGELOW, P. J.
Frances Marc Alexander and Thomas and Anna Downie (Respondents) brought a class action lawsuit against Farmers Insurance Company, Inc.,[1] and Fire Insurance Exchange alleging illegal adjusting practices. In particular, Respondents alleged that Farmers failed to comply with the method for determining actual cash value set forth in the Insurance Code[2] for a partial loss in a fire. Farmers moved to compel an appraisal of Respondents’ claims, contending that the dispute centered on the value of Respondents’ loss. The trial court denied Farmers’s motion without prejudice to renewing it at a later stage of the litigation. We affirm the trial court’s ruling.
FACTUAL AND PROCEDURAL HISTORY
Respondents were insured under Farmers homeowners policies when they each suffered partial losses to their homes and personal belongings due to fire in 2009 and 2010. They submitted property claims to Farmers, identifying the damaged property and the estimated actual cash value of each item. Respondents disputed Farmers’s adjustment of their claims, complaining that Farmers’s method of calculating depreciation was illegal under the Insurance Code.
I. Relevant Provisions of the Insurance Code
Section 2070 requires that all fire policies in California be on a standard form, which is set forth in section 2071. The standard form fire policy requires the insurer to pay “the actual cash value of the property at the time of loss.” In the event of a loss, the insured must give written notice to the insurer and “furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed.” Actual cash value is determined by the following calculation under the statute: “In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the *1186 policy limit, whichever is less. In case of a partial loss to the structure, a deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.” (§ 2051, subd. (b)(2).)
In the California Code of Regulations enforcing fair claims settlement practices, the Insurance Commissioner has explained, “When the amount claimed is adjusted because of betterment, depreciation, or salvage, all justification for the adjustment shall be contained in the claim file. Any adjustments shall be discemable, measurable, itemized, and specified as to dollar amount, and shall accurately reflect the value of the betterment, depreciation, or salvage. Any adjustments for betterment or depreciation shall reflect a measurable difference in market value attributable to the condition and age of the property and apply only to property normally subject to repair and replacement during the useful life of the property. The basis for any adjustment shall be fully explained to the claimant in writing.” (Cal. Code Regs., tit. 10, § 2695.9, subd. (f).)
If the parties fail to agree on the actual cash value or the amount of loss, they are required to participate in an appraisal. Once an appraisal demand is made and accepted, each party selects a “competent and disinterested” appraiser. (§ 2071.) Each party’s appraiser will state separately the actual cash value and loss of each item. If they disagree, they will submit their differences to a competent and disinterested umpire whom they have jointly selected. (§ 2071.) “Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, ‘informal’ means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.” (§ 2071.)
“An appraisal provision in an insurance policy constitutes an agreement for contractual arbitration. [Citations.]” (Doan v. State Farm General Ins. Co. (2011) 195 Cal.App.4th 1082, 1093 [125 Cal.Rptr.3d 793] (Doan)-, see Louise Gardens of Encino Homeowners’ Assn., Inc. v. Truck Ins. Exchange, Inc. (2000) 82 Cal.App.4th 648, 658 [98 Cal.Rptr.2d 378] [“[a]n agreement to *1187 conduct an appraisal contained in a policy of insurance ... is considered to be an arbitration agreement subject to the rules statutory contractual arbitration law”].) Accordingly, “[a]ppraisal hearings are a form of arbitration and are generally subject to the rules governing arbitration.” (Kacha v. Allstate Ins. Co. (2006) 140 Cal.App.4th 1023, 1031 [45 Cal.Rptr.3d 92]; see Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange (2008) 162 Cal.App.4th 1498, 1505 [77 Cal.Rptr.3d 88] [“appraisal award proceedings are subject to the arbitration provisions outlined in the California Arbitration Act . . .”].) However, while “arbitrators are frequently, by the terms of the agreement providing for arbitration, . . . given broad powers [citation], . . . appraisers generally have more limited powers.” (Jefferson Ins. Co. v. Superior Court (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880], italics omitted (Jefferson).)
Specifically, “ ‘[t]he function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration.’ ” (Jefferson, supra, 3 Cal.3d at p. 403; see Safeco Ins. Co. v. Sharma (1984) 160 Cal.App.3d 1060, 1063 [207 Cal.Rptr. 104] [“appraisers have the power only to determine a specific question of fact, ‘namely, the actual cash value of the insured [item]’ ”].) It is “ ‘not their function to resolve questions of coverage and interpret provisions of the policy.’ ” (Jefferson, supra, at p. 403; see Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau (2011) 193 Cal.App.4th 49, 58-59 [122 Cal.Rptr.3d 480] (Kirkwood) [“[appraisers have no power to interpret the insurance contract or the governing statutes”]; Doan, supra, 195 Cal.App.4th at p. 1094 [“ ‘[m]atters of statutory construction, contract interpretation and policy coverage are not encompassed within the ambit of [an insurance] appraisal’ ”].) Likewise, an appraisal panel generally lacks the authority “to determine whether an insured lost what he [or she] claimed to have lost or something different.” (Safeco, supra, at p. 1065.)
Section 2071 provides that “[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.” (§ 2071.) Under California Code of Regulations, title 10, section 2695.9, subdivision (e), “[o]nce the appraisal provision under an insurance policy is invoked, the appraisal process shall not include any legal proceeding or procedure not specified under California Insurance Code Section 2071. Nothing herein is intended to preclude separate legal proceedings on issues unrelated to the appraisal process.”
*1188 II. Class Action Lawsuit
Respondents brought suit on May 6, 2011, within the statute of limitations period, on behalf of a class of homeowners who received a settlement or an offer of settlement from Farmers of a partial loss property claim for less than the applicable policy limits. The complaint[3] alleged that Farmers failed to comply with the method for determining actual cash value set forth in section 2051, subdivision (b) (section 2051(b)). “Instead, Farmers determines the [actual cash value] of personal property contents and structural components in partial losses by first determining a replacement cost. Farmers then deducts depreciation according to a secret schedule that is based on the age of the item.” Respondents further alleged that Farmers did not consider the preloss physical condition of damaged property and arbitrarily deducted the depreciation based on “its secret formula based on age.”
As examples, Respondents alleged that the Downies submitted claims for a set of lead crystal Longchamp wineglasses that was 10 years old with a replacement cost of $82.13. Farmers calculated the actual cash value of the wineglasses to be 82 cents. Similarly, a 20-year-old solid walnut china buffet with a replacement cost calculated by the Downies of $1,594.32 was calculated by Farmers to have a $15.94 actual cash value. When the Downies complained, Farmers “arbitrarily depreciated the majority of items by 50 percent.” Respondents alleged these depreciation rates were contrary to section 2051, which permits “reasonable deduction for physical depreciation based upon its condition at the time of the injury . . . .” (§ 2051(b)(2).) Respondents alleged Farmers did not ask for or receive any information about the condition of the items claimed in the loss.
Respondents alleged Farmers applied a similar illegal practice to the structural components of damaged buildings. Under section 2051, “a deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure.” (§ 2051(b)(2).) Respondents complained that “Farmers is taking depreciation from structural components that are not normally repaired or replaced within the useful life of the structure. Second, Farmers calculates a depreciation percentage on a straightline basis by dividing the age of the component by an estimate of the component’s useful life. Both of these practices violate Insurance Code section 2051.” For example, Respondents alleged that “Farmers depreciated all of the following types of components despite acknowledging that they had a useful life of at least 150 years (and thus are clearly not normally subject to repair or replacement during the useful life of the house): Baseboards, insulation, doors, closets, window framing, *1189 wiring, and fireplace components.” Respondents alleged that Farmers’s unlawful depreciation methodology resulted in “lowballing” claims to insureds who were then “coerce[d] . . . into mandatory appraisal of the insurance policy, despite the fact that the appraisal provisions of the standard form policy are not applicable to a dispute over the interpretation of Insurance Code section 2051.”
Respondents’ complaint alleged claims for declaratory relief, unfair competition under Business and Professions Code section 17200, breach of contract and bad faith. As to the declaratory relief cause of action, Respondents alleged that “[a]n actual controversy has arisen and now exists between the parties concerning whether Defendant is violating Insurance Code section 2051(b) and the other regulations cited herein, including but not limited to: (1) whether Defendant is complying with Insurance Code section 2051(b) and California Code of Regulation section 2695.9(f) when it adjusts partial losses to contents claims; (2) whether Defendant may only consider age or useful life of an item, or excessively rely on age or useful life, in determining depreciation; (3) whether Insurance Code section 2051(b) permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property; (4) whether Farmers is entitled to conceal its method of depreciation from its insureds; and (5) whether Farmers must first adjust the claim and calculate [actual cash value] in compliance with Insurance Code section 2051 before it can invoke the appraisal provision of the policies.”
Respondents alleged similar controversies exist with relation to how Farmers adjusted partial losses to structural loss claims: “(1) whether Defendant is complying with Insurance Code section 2051(b) and California Code of Regulation section 2695.9(f) when it adjusts partial losses to structural loss claims; (2) whether Defendant is taking depreciation on structural components that are not normally subject to repair and replacement during the useful life of the structure; (3) whether Defendant may only consider age or useful life of an item, or excessively rely on age and useful life, in determining depreciation; (4) whether Insurance Code section 2051(b) permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property; (5) whether Farmers is entitled to conceal its method of depreciation from its insureds; and (6) whether Farmers must first adjust the claim and calculate [actual cash value] in compliance with Insurance Code section 2051 before it can invoke the appraisal provision of the policies.”
*1190 Farmers demurred to and moved to strike the complaint on grounds that there was no violation of section 2051 and the insureds were contractually obligated to first complete an appraisal. Farmers also moved to compel appraisal pursuant to the policy provisions. The demurrer was overruled in its entirety and the motion to strike was denied, with the exception of certain allegations relating to restitution not at issue here.
The trial court also denied the motion to compel appraisal, but without prejudice to a renewal of the motion at a later stage of the litigation. The court reasoned the motion was premature but that it could be viable at a later stage after certain legal and factual issues were determined in anticipation of class certification. Farmers timely appealed the denial of its motion to compel appraisal.
DISCUSSION
The parties disagree about the underlying nature of their dispute. Farmers characterizes it as a valuation dispute about the actual value of the insured property, which is subject to appraisal. Respondents describe it as a dispute over the legality of Farmers’s uniform depreciation policies, which is not subject to appraisal. This matter is about both of those issues. The question we are faced with is whether appraisal may be deferred pending resolution of the claims that cannot be decided by an appraisal.
Farmers relies on a line of decisions which holds that the remedy for an insured in such circumstances is appraisal. (Community Assisting Recovery, Inc. v. Aegis Security Ins. Co. (2001) 92 Cal.App.4th 886 [112 Cal.Rptr.2d 304] (Community Assisting); Pivonka v. Allstate Ins. Co. (E.D.Cal., Dec. 9, 2011, No. 2:ll-cv-1759-GEB-CKD) 2011 U.SJDist. Lexis 142770 (Pivonka); Enger v. Allstate Ins. Co. (9th Cir. 2010) 407 Fed. Appx. 191, 193 (Enger).) Respondents, on the other hand, rely on a series of state court decisions which holds that the trial court has discretion to defer appraisal pending a judicial determination of nonarbitrable issues raised in a declaratory relief claim. (Kirkwood, supra, 193 Cal.App.4th at pp. 58-60; Doan, supra, 195 Cal.App.4th at p. 1104.)
We conclude that the more reasoned approach lies with Kirkwood and Doan, which hold that the decision whether to stay the appraisal is committed to the trial court’s sound discretion. We turn first to an extended discussion of the relevant case law.
*1191 I. Relevant Case Law
In Community Assisting, the plaintiff nonprofit corporation brought an action on behalf of the general public under Business and Professions Code section 17204 against 194 insurance companies which provided polices in California with language substantially identical to that required under section 2071. (Community Assisting, supra, 92 Cal.App.4th at p. 890.) The complaint alleged that the insurance companies improperly adjusted property loss claims on the basis of replacement cost less depreciation rather than on fair market value in violation of Jefferson, supra, 3 Cal.3d 398. The plaintiff sought injunctive relief to compel readjustment of all claims based on this alleged unlawful business practice. (Community Assisting, supra, at p. 891.)
The insurance companies’ demurrers were sustained without leave to amend and the judgment was affirmed on appeal. The appellate court determined that the complaint failed to state an unlawful business practice because the “simplistic legal formulation” mischaracterized the holding in Jefferson and failed to take into consideration the safeguard of the appraisal process. (Community Assisting, supra, 92 Cal.App.4th at p. 892.) Reasoning that “[t]he Legislature has provided more than one measure to adjust claims under [Insurance Code section] 2071, ‘actual cash value’ being only one,” the court held that appraisal was the proper remedy. (Id. at p. 895.) “Thus, notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss.” (Id. at p. 893.) The complaint failed to adequately allege that the insurance companies’ method of valuation was an “ ‘unfair practice.’ ” (Id. at p. 894.) There was no allegation the standard form language was not included in the policy, that the insurers interfered with the appraisal process or engaged in any act which might have been a breach of the contract. (Ibid.)
Following Community Assisting and the 2003 wildfires in Southern California, the Legislature amended section 2051 in 2004 to set out actual cash value as the sole measure to adjust claims under section 2071. The amendments also provided the precise formula to determine actual cash value. (See Stats. 2004, ch. 605, § 2, p. 4763.) These amendments were introduced as part of the Homeowner Bill of Rights.
Kirkwood, supra, 193 Cal.App.4th at pages 58-60 and Doan, supra, 195 Cal.App.4th at page 1104 were decided after the 2004 amendments. In Kirkwood, the First District Court of Appeal held that appraisal was properly deferred until after the trial court ruled on the contractual and statutory interpretation issues presented in the insured’s declaratory relief action since these issues could not be determined by the appraisers. There, the insured *1192 submitted a personal property claim to the insurer after a fire destroyed his home and personal belongings. (Kirkwood, supra, at p. 54.) He provided a physical depreciation amount based on the actual condition of each item at the time of the loss. The insurer applied a blanket depreciation of 50 to 80 percent to most categories of property. The depreciation was tied to the age of the item without regard to its condition. (Id. at p. 55.) When the insured complained of “ ‘excessive depreciation,’ ” the insurer responded that there were no guidelines provided by the Department of Insurance on how to determine actual cash value but that the language of the contract justified the insurer’s approach. (Ibid.)
The insured then sued for declaratory relief, breach of contract, bad faith, and violation of the unfair competition law on a class basis. (Kirkwood, supra, 193 Cal.App.4th at p. 56.) The declaratory relief cause of action asserted a present controversy as to whether the insurer violated section 2051(b) and various regulations by depreciating personal property without regard to the actual physical condition of the property. The insurer moved to compel appraisal, which motion was denied by the trial court without prejudice. (193 Cal.App.4th at p. 57.) Distinguishing several federal cases (discussed post) as well as Community Assisting, the Court of Appeal affirmed the trial court’s order, reasoning that “[ojnly the court, not an appraiser, can deliver declaratory relief as to the proper meaning of section 2051 within the context of [the insurer’s] insurance adjusting practices.” (Id. at p. 62.)
Kirkwood distinguished Community Assisting, noting it was decided before the 2004 amendment of section 2051 setting forth how actual cash value should be calculated. Prior to the enactment of the new provisions relating to depreciation, “there was no statutory direction dictating how the insurer was to measure the actual cash value of recovery under an open policy.”[4] (Kirkwood, supra, 193 Cal.App.4th at p. 60.) Therefore, the Community Assisting court did not “construe the statute and regulation governing depreciation practices under an open policy.” (Kirkwood, supra, 193 Cal.App.4th at p. 60.)
“The result favored by [the insurer] and the federal district court decisions . . . bear the real, deleterious consequence of forcing insureds to pay for an appraisal prior to a definitive judicial declaration establishing the correct legal basis for determining actual cash value. A judicial declaration that [the insurer’s] interpretation of section 2051(b) and its policy does not violate the statute would be the end of the line: no appraisal would be necessary, and insureds . . . would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and *1193 would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior. In our view judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer’s] statutory interpretation as reflected in its adjustment policy.” (Kirkwood, supra, 193 Cal.App.4th at pp. 62-63.)
Three months later, the Sixth Appellate District Court of Appeal concurred with Kirkwood’s holding in Doan, supra, 195 Cal.App.4th at page 1104. There, the plaintiff held a property insurance policy from State Farm which contained the standard form appraisal clause. After the insured’s home and its contents were destroyed by a fire, the parties were unable to agree on the value of the lost personal property. Acting on behalf of himself and other State Farm policyholders in California, the insured filed a putative class action for declaratory and other relief, alleging that State Farm’s method of calculating depreciation violated the terms of the policy and the Insurance Code. (Id. at pp. 1087-1089.) The trial court sustained State Farm’s demurrer to the complaint without leave to amend on the ground that the insured had failed to first submit his valuation dispute to an appraisal. (Id. at p. 1090.) The judgment was reversed on appeal. The appellate court held that the insured could pursue his cause of action for declaratory relief because the statutory and contractual interpretation issues raised in his action were beyond the limited authority of an appraisal panel to decide. (Id. at p. 1098.)
Turning to the question of whether the interpretation issues or the valuation issue should be resolved first, the court concluded that, under Code of Civil Procedure section 1281.2, subdivision (c), “insurance appraisals—like arbitration proceedings—may be stayed pending the resolution of legal issues that lie outside the appraiser’s jurisdiction.” (Doan, supra, 195 Cal.App.4th at p. 1101.) The court further observed that “it is particularly appropriate to do so where a determination of the legal issues may obviate the need for an appraisal or inform the appraisal process.” (Ibid.) Given the insured’s allegations, a judicial declaration that State Farm’s depreciation practice did not violate the Insurance Code or the policy could make an appraisal unnecessary. (Id. at p. 1104.) Because it appeared the trial court was unaware of its discretionary authority under Code of Civil Procedure section 1281.2, the matter was remanded to the trial court with directions to exercise its discretion to consider whether and when declaratory relief should be granted. (Doan, at p. 1105.)
Seven months after Doan was decided, the federal district court issued an opinion in Pivonka, supra, 2011 U.S.Dist. Lexis 142770, distinguishing Kirkwood and Doan. There, a group of plaintiffs sued Allstate for declaratory relief, breach of contract, unfair competition and bad faith. The plaintiffs alleged that Allstate used a secret standardized schedule rather than the *1194 actual physical condition of the property to calculate depreciation. (Pivonka, supra, at p. *3.) Allstate moved to compel appraisal, “arguing Doan and Kirkwood are inapplicable because unlike the parties in those cases, ‘the parties here do not have a dispute about the standard that governs appropriate depreciation—and indeed Allstate quoted from the standard in pre-litigation correspondence.’ ” (Id. at p. *7, italics added.) In the referenced prelitigation correspondence, Allstate advised its insured that: “ ‘As you are aware, under the State of California’s Department of Insurance regulations, an insurer must consider the age and condition of an item during its evaluation. The damaged/destroyed items’ were input in to the estimate using an average condition however, if you can substantiate that the items were in better than average condition, please submit this information to me.’ ” (Id. at pp. *7-*8.) The district court found that “. . . Plaintiffs make the conclusory argument that statutory and regulatory questions have to be clarified before these factual disputes are decided, this argument is based on unsupported contentions and does not show the need to clarify the parties’ legal relations before appraisal is ordered.” (Id. at pp. *12—*13.) As a result, the parties were ordered to appraisal and the case was stayed pending the conclusion of the appraisal process. (Id. at p. *13.)
Pivonka relied upon Enger, supra, 407 Fed. Appx. 191, an unpublished Ninth Circuit opinion.[5] In Enger, the plaintiff alleged that Allstate improperly undervalued her damaged property because it failed properly to calculate actual cash value under section 2051. The Enger court stated, “By the plain language of the insurance policy, it is immaterial that Enger believes the cause of the disagreement concerning the actual cash value is Allstate’s alleged use of an improper valuation method. The contract makes no exception where the source of the dispute is the valuation method used: so long as the parties ‘fail to agree as to the actual cash value or amount of loss,’ the appraisal remedy is triggered at the request of either party.”[6] (Enger, at p. 193.)
II. Analysis
Faced with substantially the same facts and procedural posture as the cases discussed above, we conclude that Kirkwood and Doan provide the *1195 better reasoned approach to resolving this issue. We agree that a trial court has the discretion to defer appraisal in appropriate circumstances, just as it has “the power to sever arbitrable claims from inarbitrable ones and to stay either the arbitration or the judicial proceedings pending the outcome of the other.” (Doan, supra, 195 Cal.App.4th at pp. 1098-1099.) Although Code of Civil Procedure section 1281.2 generally requires a trial court to order the parties to arbitration once the existence of a valid arbitration agreement covering the dispute is established, it expressly provides an exception: “If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.” (Code. Civ. Proc., § 1281.2, subd. (c), 3d par.) As the rules governing arbitration apply with equal force to insurance appraisals, the decision whether to stay the appraisal is committed to the trial court’s sound discretion. (Doan, supra, at p. 1100.)
Farmers argues that section 2071 requires that “appraisal must be exhausted before a suit or action is ‘sustainable in any court.’ ” Farmers relies on Community Assisting for the proposition that appraisal is the mandatory remedy, even if the insureds challenge the valuation methodology. Community Assisting is distinguishable. As noted by Kirkwood, Community Assisting was decided prior to the 2004 amendments. Also, the court in Community Assisting found that the plaintiff failed to assert an unlawful business practice claim because it failed to allege the defendants’ conduct was unlawful. In particular, the plaintiff failed to allege the defendants “engaged in any acts which might have been a breach of the standard form policy.” (Community Assisting, supra, 92 Cal.App.4th at p. 894.) Community Assisting was not asked to consider the availability of declaratory relief to construe the Insurance Code and its attendant regulations. The court had already reached the merits of the plaintiff’s claim and found it lacking. The demurrer was sustained without leave to amend. Thus, it did not need to invoke Code of Civil Procedure section 1281.2 to determine whether other issues not subject to appraisal needed to be determined prior to appraisal. Here, there has been no such conclusion on the merits of Respondents’ claims and the trial court retains discretion to delay its order to arbitrate under Code of Civil Procedure section 12.81.2.
Not only is appraisal a statutory prerequisite to a lawsuit, Farmers contends Respondents lack standing to advance their other causes of action without a showing of economic injury, which can only come about after an appraisal. Farmers argues that “[i]f appraisers conclude that the amount of the loss is equal to or less than the amount Fire paid to Respondents, they would *1196 have no damages or standing to seek relief against Fire. Only if the appraisers determine that . . . the amount of loss exceeds the amount Fire paid to Respondents, would there be some basis to proceed with the lawsuit.” As explained in Doan, “there is no need to demonstrate damages in order to qualify for declaratory relief.” {Doan, supra, 195 Cal.App.4th at p. 1104.) Section 1060 of the Code of Civil Procedure specifically provides that “[t]he declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.”
Having determined that the trial court has discretion to defer appraisal, we review its denial of the motion to compel appraisal for abuse of that discretion.[7] (Doan, supra, 195 Cal.App.4th at p. 1102, fn. 8.) We find none. Here, the trial court exercised its discretion to defer an appraisal pending a judicial declaration of the parties’ rights under the insurance policies and statutes. The trial court reasoned that Kirkwood was directly on point and observed that “the allegations of Kirkwood are strikingly similar to those at issue in the instant litigation, and counsel in Kirkwood are the same as those here.” Respondents alleged in their complaint that controversies existed regarding the rights and obligations of the parties under the statutes and policy. On appeal, Respondents summarized these controversies as “(1) whether certain structural items may legally be depreciated at all, and (2) whether Farmers may deduct formulaic depreciation of personal property and structural components based on age, instead of only taking depreciation for the physical wear and tear of items.” The trial court concluded that “[t]he motion is premature, due to the Plaintiffs’ challenge of the alleged unlawful institutional practice of Farmers under Insurance Code § 2051 and attendant regulations, the legality of [which] must be assessed in advance of any appraisal.”
Kirkwood’s view on judicial economy applies equally here: “[a] judicial declaration that [the insurer’s] interpretation of section 2051(b) and its policy does not violate the statute would be the end of the line: no appraisal would be necessary, and insureds . . . would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior. In our view judicial economy favors resort to declaratory relief in this instance by *1197 heading off duplicative future actions challenging [the insurer’s] statutory interpretation as reflected in its adjustment policy.” (Kirkwood, supra, 193 Cal.App.4th at p. 63.)
Appraisal may also be averted if Respondents receive the declaratory judgment they seek. At oral argument, Respondents’ counsel indicated they want a declaration that Farmers’s practices are illegal as well as an order that Farmers readjust the claims in conformity with section 2051. If Farmers conducts a new adjustment conforming to the law, all parties may be satisfied. Then, there would be no dispute about the amount of the loss and no appraisal would be necessary. Moreover, a judicial declaration of what the statute means would, as in Kirkwood, “inform the appraisal.” For example, the trial court could declare that certain components are not “normally subject to repair and replacement” under section 2051(b)(2) if they have a life expectancy exceeding 100 years or if their life expectancy exceeds a certain proportion of the useful life of the structure to which it is attached. We acknowledge that it may not be workable for a trial court to determine that certain structural components, such as framing or electrical or plumbing, are categorically not normally subject to repair or replacement. We do not agree with Farmers, however, that whether something is “normally” subject to repair and replacement should be considered on a case-by-case basis. Without some guidance from the courts regarding the meaning of section 2051, it is virtually guaranteed that all partial losses will result in litigation and appraisal.
Farmers attempts to distinguish Kirkwood and Doan by adopting Allstate’s successful strategy in Pivonka. In its opening brief, Farmers claims there is no dispute between the parties as to the meaning of section 2051. Farmers “acknowledges that depreciation cannot be based solely on age and does not dispute that section 2051 requires consideration of condition.” Farmers also agrees that it may not depreciate “structural components that are not normally repaired and replaced during the useful life of a structure.” “Thus, a judicial declaration on the meaning of the statute is unnecessary in this case .... If the appraisal confirms that Fire did in fact pay Respondents the ‘actual cash value’ (or more) to which they were entitled, further litigation over Fire’s allegedly improper valuation practices at the time of Respondents’ losses— especially on the classwide basis that Respondents are attempting to pursue here—would be a complete waste of time and resources.” We are not persuaded to accept Farmers’s “acknowledgment” at face value.
First, this argument was not presented below and is waived. In its demurrer to the first amended complaint, Farmers argued that “[t]he essence of Plaintiffs’ argument is that the words ‘physical depreciation’ as used in section 2051(b)(2) restrict insurers and appraisers to depreciation based on the damaged property’s observable condition just prior to the loss and nothing *1198 else. This is wrong.” Farmers urged the trial court to interpret section 2051(b)(2) to allow an item’s age to be considered in depreciating lost or damaged property “because a legal determination of the meaning of this statute is subject to resolution by this Court at the pleading stage.” Farmers’s attorney’s statements during hearings at the trial court that condition could also be considered in calculating actual cash value is not equal to an argument that declaratory relief is unnecessary because there is no dispute as to the meaning of section 2051(b)(2). To the contrary, Farmers recognized there was a dispute over the meaning of section 2051(b)(2).
Second, Farmers’s “acknowledgment” that condition is to be considered in calculating depreciation does not lay the dispute to rest. The complaint sufficiently describes a valuation process that does not take into consideration a loss item’s condition. That Farmers now, on appeal, concedes it must take condition into consideration in no way erases those allegations. Nor does Farmers’s acknowledgment that certain structural losses are not subject to depreciation circumvent the allegations in the complaint.
At oral argument, Farmers’s counsel noted that Farmers advised Alexander in a letter that “[a]ny depreciation applied to this estimate of repair is based on average quality, condition, age and useful life, unless otherwise noted.” Unlike in Pivonka, where Allstate explained to its insureds that it did take physical condition into consideration and offered to recalculate depreciation if its insureds could show their items were of superior, rather than average, quality, there is no indication in the record that Farmers did the same in adjusting Respondents’ claims, despite the generic language in its letter. There is also no indication that Farmers’s acknowledgment on appeal translates into changed adjustment practices in the future. Thus, we disagree with Farmers’s argument that “whether or not Fire sufficiently considered condition in arriving at an item’s actual cash value in evaluating Respondents’ losses is—for purposes of determining whether the matter is subject to appraisal—beside the point and not grounds to avoid an appraisal. The dispute, at best, is one of degree in Fire’s consideration of condition, and not a statutory interpretation disagreement requiring declaratory relief.”
Third, we do not agree that further litigation of Farmers’s alleged illegal valuation practices would be obviated if it turns out the appraisal amount is equal to or more than what Farmers has offered to pay Respondents. Indeed, Farmers concedes that after appraisal is complete, “Respondents may proceed with a challenge to Fire’s alleged improper practice for calculating depreciation.” Whether the appraisers correctly calculate actual cash value of Respondents’ losses is irrelevant to whether Farmers correctly calculated actual cash value when it adjusted the claims.
*1199 DISPOSITION
We affirm the order denying, without prejudice, Farmers’s motion to compel appraisal. Respondents are awarded costs on appeal.
Rubin, J., concurred.

 Appellants note that Farmers Insurance Company, Inc., is a Kansas corporation which does not write policies in California and has been erroneously sued. However, it appears that Fire Insurance Exchange (Fire) and Farmers Insurance Company are affiliated. The Farmers Insurance logo is prominently displayed on Respondents’ policies, which are included in the record, and the trial court refers to appellants as Farmers. For ease of reference, we will refer to appellants collectively as Farmers, but by doing so, do not intend to imply Farmers Insurance Company, Inc., is a proper party in this action.

 All further section references are to the Insurance Code unless otherwise specified.

 The facts and allegations are taken from the first amended complaint, which is the operative complaint.

 In an open policy, “the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss.” (§ 411.)

 Under rule 32.1 of the Federal Rules of Appellate Procedure (28 U.S.C.), citation to unpublished opinions issued on or after January 1, 2007, is permitted.

 Kirkwood criticized the trial court’s opinion in Enger v. Allstate Ins. Co. (E.D.Cal. 2009) 682 F.Supp.2d 1094, for “blindly” embracing an incorrect interpretation of Community Assisting that the appraisal process must be exhausted before suit may be brought. (Kirkwood, supra, 193 Cal.App.4th at p. 61.) According to Kirkwood, the Enger trial court failed to discuss the nature of the declaratory relief claim or delve into the propriety of invoking that relief. (Kirkwood, supra, 193 Cal.App.4th at p. 61.) We believe the Kirkwood court would have similar criticisms of the Ninth Circuit’s opinion in Enger. It is four pages long and fails to cite to Community Assisting or discuss the propriety of invoking declaratory relief.

 Farmers argues that the standard of review is de novo. We disagree. It is true that a court’s decision as to arbitrability is subject to de novo review. (Molecular Analytical Systems v. Ciphergen Biosystems, Inc. (2010) 186 Cal.App.4th 696, 707 [111 Cal.Rptr.3d 876].) But here, Farmers acknowledges that the claims regarding its valuation methodology are not subject to appraisal. There is no dispute that valuation of the loss items is subject to appraisal. The question here is whether that appraisal may be deferred, and an abuse of discretion standard of review is applicable.