Filed 6/27/16  Blackwell v. Foremost Ins. Co. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GORDON BLACKWELL, as Successor in Interest, etc.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>FOREMOST INSURANCE COMPANY,<br><br>        Defendant and Respondent. | H042263<br>(Santa Cruz County<br> Super. Ct. No. CV-175362) |

Gordon Blackwell, as successor in interest to his deceased father, Nathaniel Larimore Blackwell,[1] appeals from an order dismissing his father's action against Foremost Insurance Company (Foremost)[2] for breach of contract and breach of the covenant of good faith and fair dealing.  Gordon contends that the trial court erroneously rejected his assertion that Foremost had waived a policy term requiring appraisal in the event of dispute over the amount or scope of loss.  Gordon further argues that the appraisal provision itself is invalid and unenforceable.  We find no error and therefore must affirm the order.

---

[1] Plaintiff Nathaniel Larimore Blackwell was referred to throughout the proceedings as Larry, the name he used in the documents he signed.  We will adhere to that nomenclature and refer to plaintiff as "Larry" to distinguish him from his son, appellant Gordon Blackwell (Gordon).

[2] Foremost was sued as Foremost Property and Casualty Insurance Company.  In its order the court changed the designation of the defendant to its correct name, Foremost Insurance Company.

*Background*

The events underlying this case arose on January 19, 2012, when a wind storm damaged Larry Blackwell's mobile home. The mobile home was insured by a "Foremost Platinum Manufactured Home policy" issued by Foremost and serviced by Tina Andreatta of Farmers Insurance Group. On February 3, 2012, Gordon sent Andreatta an e-mail informing her that "my dad got some wind and rain damage at his home in the last storm."[3]

Between the date of the storm and the report to Foremost, Gordon performed repairs under the name "Dev. Co. Inc." On February 8, 2012, Mercy Arapas, a property adjuster with Crawford U.S. Property & Casualty, met with Larry and inspected the property. She initially recommended that Foremost set its reserves at $25,000. She also asked Gordon for written estimates from contractors he was planning to use for the anticipated repairs as well as documentation for the work that had already been completed. Gordon assured Arapas that he would have the "info" by the end of the weekend, three days later. In addition to his own bids from Dev. Co. Inc., Gordon provided a $25,856 estimate for "New Roof and Repair" from Kriege Construction.

On February 28, 2012, Foremost sent Larry a settlement check for $18,098.86, based on the replacement cost of the home, less the policy deductible and depreciation. Foremost wrote to Gordon on March 14, 2012, notifying him that the "final scope of damages" had not yet been determined and explaining the items that were not covered under Larry's policy. It also advised Gordon that by writing the letter the company was not waiving "any of the terms, conditions, or provisions of [the] insurance policy, all of which are expressly retained and reserved." Almost every letter sent to Gordon or to the

---

[3] Foremost's records indicated that Gordon reported the damage to Foremost on February 6, 2012.

Blackwells' representative between March 14 and October 15, 2012 repeated this statement of nonwaiver.

Foremost again wrote to Gordon and Larry on March 22, 2012, assuring them that no coverage decisions had yet been made and requesting a meeting with a contractor chosen by each side. In a March 28 letter Foremost reminded Gordon and Larry that in order to complete its investigation and evaluation, it needed not only to verify the cost of emergency repairs already performed but also to arrive at "an agreed scope and cost of repairs with a licensed contractor."

On April 2, 2012, having received a documented list of repairs from Gordon, Foremost responded to each item, noting those that were allowed, those that required additional explanation, and those that were not covered, had already been paid, or required a competitive bid. Foremost assured Gordon and Larry that it would continue to keep them advised as the investigation progressed. On April 5, Foremost sent a "building supplemental payment" of $6,174.19 and an "initial" $1,312.55 payment for personal property.

Beginning April 17, 2012, Foremost addressed its correspondence to Ruben Estrada at Adjusters Exchange. Estrada provided a May 7 report estimating the total structural repairs to be $85,715.80. After meeting with Estrada and a representative of Fuzzy Mobile Home Services, Inc.,[4] Foremost asked for clarification of certain claimed items and receipts for contents claims that exceeded its past payments.

A consultation with "a contractor experienced in mobile home repairs" (presumably Fuzzy Mobile Home Services, Inc.) led Foremost to revise its estimate to $18,430.68 on May 21, 2012. Foremost expressed continuing concern over the large

---

[4] Fuzzy Mobile Home Services, Inc. was identified in Larry's pleadings as a licensed contractor in the home repair business.

disparity between this figure and Estrada's $85,715.80 estimate, but it acknowledged its understanding that further documentation would be forthcoming.

In addition to reiterating the statement of nonwaiver in this May 21 letter, Foremost called Estrada's attention to paragraph 8 of the "Policy Conditions" in Larry's policy, the provision that is at issue in this appeal.[5]  Paragraph 8 provided as follows: "**Legal Action Against Us**.  You may not bring legal action against us concerning this policy unless you have fully complied with all of the policy terms.  If you and we have failed to agree on the amount of the loss, then you may not bring legal action against us until you have submitted and resolved that dispute through appraisal as described in Condition 5.  Suit must be brought within one year after the loss occurs."  "Condition 5" described the process for appraisal in the event that the parties could not agree on the amount of the loss.[6]

On July 31, 2012, Foremost sent Estrada a revised estimate for repairs amounting to $31,126.01.  After subtracting the deductible and the prior payment, Foremost calculated its additional payment to be $12,527.15.  The next day Foremost advised Estrada that due to an oversight, it would be including an additional $1,219.65 in the ensuing payment.

On August 7, 2012, Foremost acknowledged correspondence from Estrada the day before and expressed regret that they had "not been able to arrive at an agreed cost of

---

[5] Additional references to "paragraph 8" without further attribution are to the "Policy Conditions" of the insurance policy Foremost issued to Larry Blackwell.

[6] Paragraph 5 of the "Policy Conditions" provided, in relevant part:  "**Appraisals**. If you and we fail to agree on the amount of the loss, then both you and we have the right to select a competent and disinterested appraiser within 20 days from the day of disagreement.  The appraisers will determine the amount of the loss.  If they do not agree, then the appraisers will choose a competent and disinterested umpire.  Then each appraiser will submit his amount of the loss to an umpire selected by them or by a court having jurisdiction if the appraisers cannot agree upon an umpire.  The agreement of any two will determine the amount of loss for damage to your property."

4

repairs to the home."[7]  Foremost's primary complaint was that Estrada believed Foremost's estimate (with which a "mobile home contractor" had agreed) was too low, but Estrada had failed to support his own estimate.  Estrada and Foremost had also disagreed about the method of repairing the subfloor of the home.  Foremost concluded, "We believe that this matter best [*sic*] be settled through the appraisal process."  It quoted paragraph 5 of the policy conditions in Larry's policy and promised to notify Estrada of the name of its selected appraiser by August 27.

On August 17, 2012, Foremost gave Estrada the name and contact information of its appraiser and asked Estrada to let Foremost know who his appraiser would be by August 27, 2012.

On August 29, 2012, Foremost acknowledged a letter of August 16 in which Estrada had indicated that he wished "to bypass the appraisal process" and instead settle the claim.  Foremost expressed skepticism regarding the likely success of such an undertaking, noting that Estrada's estimate for structural repairs was "nearly 600% higher than an estimate for repairs agreed to with a licensed mobile home contractor." Foremost emphasized that the policyholder was certainly eligible to complete those repairs, but the cost to do so "should not exceed those by licensed contractors who regularly repair such

---

[7] Foremost described the divergence in the parties' positions as follows:  "We have reviewed previously submitted receipts and invoices, some written by Gordon Blackwell acting as his own contractor, and have paid what we were able to substantiate. We have reviewed the estimates you have submitted, but you have not documented how you arrived at your estimate amounts, which appear to be far in excess of what would be deemed reasonable.  You have stated to us that you prefer not to deal with contractors and prefer to write your own estimates. . . You have stated that our estimate is 'unreasonably low,' but have not offered any information, such as a comparative estimate from another contractor, instead asking us to rely solely upon your judgement.  You have stated that 'many costs have been incurred,' but you have not supplied documentation supporting such costs, such as receipts or invoices.  If you have invoices, receipts or estimates from contractors, material suppliers, and the like, please forward them for review."

damage. Our goal is to indemnify for loss." Foremost also pointed out that as "the policyholder continues to complete repairs, you should have a good record of his labor expenses and material expenses to date." Foremost asked for that record in a way that could be understood, as well as documentation for "Additional Living Expenses," for which Estrada had projected $120,650 for 55 days ($2,193.64 per day). Once it received that documentation, Foremost added, it would "be happy to review our position, however, [*sic*] we will not waive our option to proceed with appraisal to settle this matter."

On October 15, 2012, Foremost wrote to Estrada one last time. It noted that Estrada had not responded to its requests since his letter of August 16. Accordingly, it was closing the claim and could not make any additional payment for any damage. Foremost did, however, invite Estrada to submit receipts for "Additional Living Expenses if they were incurred." In addition, though it was closing the file, the letter added, "However, if after reviewing this letter and reading the policy language, you believe there is additional information that would apply to your claim, please provide us with those facts for consideration. If you submit additional information we will notify you whether your file will be reopened." Foremost again quoted paragraph 8 of the policy conditions in this letter.

The next day Larry Blackwell initiated this action against Foremost, alleging breach of contract and breach of the covenant of good faith and fair dealing. He also accused Fuzzy Mobile Home Services, Inc. of negligence in making recommendations about the scope of necessary repairs and of "aiding and abetting" Foremost in its tortious misrepresentations. Finally, Larry alleged intentional infliction of emotional distress against Ken Sovey, the Foremost Field Claims Supervisor who had signed almost all of the letters to the Blackwells and then to Estrada between March 28 and October 15, 2012. Fuzzy Mobile Home Services, Inc. later settled with Larry. According to Foremost (without citation to the record), Ken Sovey was eventually dismissed as "an improper defendant."

6

At some point in the year after the complaint was filed, Larry died. On October 29, 2013, Gordon filed a first amended complaint containing the same allegations but naming himself as an individual plaintiff and as successor in interest to Larry. Gordon remained in the case as an individual plaintiff until April 7, 2015, when his individual claims were dismissed with prejudice at his request.

On December 15, 2014, Foremost submitted multiple motions in limine along with its trial brief in anticipation of an April 6, 2015 trial.[8] Among them was Motion in Limine No. 7 to preclude both of the claims against Foremost because Larry (through Estrada) had failed to cooperate in obtaining an appraisal, a condition precedent to a lawsuit under Larry's policy. Gordon responded that Foremost "never seriously pursued the appraisal process," because to do so "would have done nothing to settle an essential dispute, the proper investigation of damage and scope of repair." Consequently, litigation would have been necessary to determine whether Foremost's refusal to pay for "repairs identified as necessary by the insured" amounted to bad faith. Foremost's affirmative defense was, in Gordon's view, a "non-starter." It was "inappropriate," he believed, for Foremost "to wait for the eve of trial and disguise a motion for summary judgment as a motion in limine."

Gordon elaborated on this last point in a motion for a ruling on the validity of paragraph 8 of the policy conditions, the appraisal prerequisite to suit. Gordon asked the court to rule that Foremost had waived this condition; that it was estopped from asserting the condition; that appraisal would not have resolved all of the issues in the action; and that the condition was invalid as a matter of law. Gordon argued that Foremost's Motion in Limine No. 7 was the first time it had invoked the appraisal prerequisite; it had not moved to compel an appraisal, had not asserted the prerequisite as an affirmative defense,

---

[8] The superior court's register of actions indicates that Foremost also filed a motion for judgment on the pleadings.

7

and had not raised the point either by a motion for summary judgment or in a prior motion for judgment on the pleadings.  Consequently, Gordon urged the court to refuse to enforce paragraph 8 and preclude Foremost's reliance on the condition either as a bar to the lawsuit or as a defense at trial against the claim of breach.

The trial court heard argument on both motions on March 24, 2015.  In an order filed April 8, 2015, the court ruled that (1) paragraph 8 of the policy conditions was valid, (2) Foremost adequately pleaded the prerequisite in its answer, (3) Foremost had not waived that provision, and (4) Foremost was not estopped from asserting it.[9] Accordingly, the court dismissed the first amended complaint.  This appeal followed.[10]

*Discussion*

1. *Waiver*

On appeal, Gordon renews his contention that Foremost waived its right to assert paragraph 8, the appraisal prerequisite.  In his view, waiver served to preclude not only an untimely demand for appraisal but also the use of paragraph 8 as a defense to the lawsuit.  According to Gordon, Foremost failed to raise the condition precedent "at any of the many court appearances or briefs placed before the court, including a court-supervised mediation."  As a result of Foremost's "Inaction Over Twenty-Six Months of Litigation," it should not have been permitted to assert the prerequisite to suit. Gordon adds express waiver as well, contending that when the court offered Foremost the opportunity for a stay of the trial so that Foremost could pursue its appraisal rights, Foremost declined.

---

[9] Gordon does not continue to assert estoppel on appeal.

[10] On appeal, neither party mentions the court's separate ruling stating, "Judgment shall be separately entered in favor of Foremost Insurance Company."  No separate judgment has been filed, but both parties appear to assume that none was intended.  We will construe the April 8, 2015 order as the court's final expression of its ruling rather than deeming the appeal premature.

Gordon compares this case to decisions on waiver of the contractual right to compel arbitration, particularly in employment contexts. Whether Foremost waived the right to demand appraisal, however, is immaterial to the disposition of this appeal, because the issue decided by the trial court was "whether the matter should proceed at all." Indeed, as Gordon himself emphasizes, at the hearing Foremost declined the court's offer to delay its ruling to give Foremost an opportunity to petition to compel the appraisal. The court went on to rule that the entire lawsuit was foreclosed. On appeal, our focus is therefore on the court's determination that paragraph 8, the appraisal condition, required dismissal of the entire action.

Gordon asserts that Foremost "forefeited [*sic*] its right to enforce the appraisal condition" by failing to enforce its right "during more than two years of litigation." According to Gordon, Foremost "sat on its hands" while the parties engaged in discovery, conducted inspections, traded depositions, and engaged in mediation. Thus, Gordon argues, "Foremost's conduct was inconsistent with its right to appraise because it did nothing for more than two years to suggest it wanted to appraise, never mentioned the appraisal condition in any discovery response or brief to the court, and in fact took full part in the litigation which, as courts have held, is itself evidence of waiver." By failing to move to compel appraisal or enforce the prerequisite by demurrer or summary judgment—and then by declining the court's invitation to move to compel appraisal Foremost "indisputably" waived application of paragraph 8. Gordon further contends (without citation to authority) that the standard applied by the trial court—clear and convincing evidence—was incorrect.

Whether the court applied the correct standard is immaterial here. As there are no disputed issues of fact, the question of waiver becomes one of law. (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196, 1206 (*Saint Agnes*) [" '[w]hen . . . facts are undisputed and only one inference may reasonably be drawn, the

issue is one of law and the reviewing court is not bound by the trial court's ruling"].)  We agree with the court's determination that no waiver occurred.

Waiver is the intentional relinquishment of a known right with knowledge of the facts. It may be either express or implied.  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 (*Waller*).)  " 'The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' "  (*Id.* at p. 31, quoting *City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107-108.)  A key component of the doctrine of waiver is *intent*; consequently, the mere failure to call attention in a denial letter to an exclusion or limitations provision is not enough to bar the insurer from asserting such a defense.  (*Waller*, *supra*, at pp. 31-32; see also *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 689 ["waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision"]; *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 722 (*Velasquez*) [no waiver of limitations clause by letter denying claim].)  Appraisal terms are considered comparable in significant respects to arbitration clauses (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 [appraisal agreement in insurance policy "is considered to be an arbitration agreement subject to the statutory contractual arbitration law"]; accord, *Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1129; see also *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1093 (*Doan*) ["[a]n appraisal provision in an insurance policy constitutes an agreement for contractual arbitration"].)[11]  Waiver of such terms is "not to be lightly inferred and the

---

[11] In *Doan*, *supra*, 195 Cal.App.4th at p. 1094, this court noted that while appraisal is a form of arbitration, " 'there are significant differences between the powers of an arbitrator and those of an appraiser.' [Citation.]  Appraisers' powers are far more limited."  Appraisers cannot resolve questions of coverage or interpret provisions of the policy, but only determine the scope and amount of damage.

party seeking to establish a waiver bears a heavy burden of proof." (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1195.)

In *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1148-1149 (*Stephens XII*), where the insured's building suffered considerable damage caused by burglars, the insured asserted a waiver of the insurer's right to insist on compliance with a policy provision requiring completion of repairs before it would be obligated to pay replacement costs. The argument was unsuccessful: no express waiver of the provision was in evidence, and no acts by the insurer suggested an *intention* to abandon its rights under the repair provision. Similarly, here "there is no evidence, much less evidence that is clear and convincing," that Foremost *intentionally* relinquished its right to assert the appraisal condition of paragraph 8. (*Stephens XII*, *supra*, at p. 1148.)

On the contrary, as noted earlier, almost every letter sent over the course of seven months during the investigation and negotiation period reminded the insured that "[b]y the writing of this letter, we do not waive any of the terms, conditions, or provisions of [the] insurance policy, all of which are expressly retained and reserved." And contrary to Gordon's representation that Foremost said nothing about the appraisal condition in its answer to the complaint, the answer did assert that "plaintiff has not fulfilled its [*sic*] obligations under the policy" (26th affirmative defense) and that he "has chosen not to pursue all remedies under its [*sic*] policies, to include but not limited to, arbitration" (28th affirmative defense).[12] That Foremost did not specifically and explicitly invoke paragraph 8 in its correspondence or in its answer is not equivalent to an expression of intent to waive this provision. (Cf. *Velasquez*, *supra*, 1 Cal.App.4th at p. 722 [not raising limitations provision in denial letter does not establish intent to waive policy provision].)

---

[12] Foremost asserts that it filed a similar answer to the amended complaint, but it refers us to no evidence of such a pleading in the record provided by the parties.

11

Nor is Foremost's mere failure to file a demurrer or similar motion sufficient to show *intent* to waive the appraisal prerequisite.[13]

Gordon's assertion of express waiver goes nowhere. It is based on Foremost's decision to forgo a continuance for the purpose of a motion to compel appraisal. But the decision not to pursue appraisal at this point—the culmination of the hearing on the parties' motions—was not equivalent to an abandonment of Foremost's right to enforce the condition precedent to the lawsuit.

Gordon unsuccessfully relies on *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888 (*Rounds*). In that case, our Supreme Court held that the issue presented in the employer's suit against labor unions was covered by the arbitration clause in their collective bargaining agreement. As relevant here, the high court further determined that dismissal rather than a stay was appropriate, since the plaintiff "at no time attempted to pursue its arbitration remedy," and the defendants asserted this fact as an affirmative defense and raised the issue three times before the trial date. (*Id.* at p. 899.) *Rounds* does not offer an escape from dismissal here. There it was the *plaintiff's* failure to pursue arbitration that constituted waiver and led to dismissal; here, in contrast, the plaintiff seeks to eviscerate the *defense* by asserting waiver. Moreover, as later explained by the Supreme Court in *Saint Agnes*, *supra*, 31 Cal.4th at p.

---

[13] Addressing the claim of waiver by participating in litigation, Foremost reviewed the causes of delay in the proceedings: "Plaintiff's counsel requested a trial continuance due to an ongoing trial, and Defendants stipulated to a trial continuance to November 15, 2014. Defendants then discovered that former defendant Ken Sovey was in a hospital in Texas with pneumonia and [would] be unable to travel in time for the May 5, 2014 trial date . . . As plaintiff's counsel is well aware, Larry Blackwell passed away in the middle of the litigation. Finally, this Court with the agreement of all parties moved the trial date to March 30, 2015. To then utilize these facts to claim that Foremost has been litigating for two and [a] half years is a misrepresentation of the reality of the litigation history and lacks any merit as evidence of waiver." The court summarized this history similarly at the March 2015 hearing.

12

1202, the dismissal in *Rounds* was warranted because the only disputed issue was one subject to the arbitration clause. "Viewed in context, *Charles J. Rounds* provides no support for denying arbitration of arbitrable claims in an action where, as here, the party seeking arbitration did not file the lawsuit in which arbitration is sought." (*Ibid.*)

*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307 (*Platt Pacific*) is not helpful to Gordon either. In that case the Supreme Court held that a contracting party could not compel arbitration when it had failed to comply with a contract provision that required a demand for arbitration within a specified time, and where the provision was within its power to perform. (*Id.* at pp. 313-314.) It was that specific context—the failure to demand arbitration within the time allowed by contract—in which intent was discounted as an essential element of waiver. (*Id.* at pp. 314-317.) In any event, here it was Larry, represented by Estrada and Gordon, who failed to comply with a contract provision; it was his inaction that constituted a violation of the appraisal requirement. Through Estrada on August 16, 2012, Larry expressly *rejected* Foremost's request for cooperation in the appraisal process, informing the company that it wished to bypass the process and settle the claim instead. It was that rejection, followed by Larry's refusal to respond to additional correspondence, that led Foremost to conclude that further negotiations were not forthcoming and that closure of the file was warranted. Only one day later Larry filed suit. Gordon's repudiation of the appraisal prerequisite should not be converted to a duty on the part of Foremost to either move to compel appraisal or forfeit the defense. Thus, it was Larry and Gordon who prevented the issuance of any award by declining to participate in the appraisal process. Absent grounds for estoppel--a claim Gordon has expressly abandoned on appeal—and absent *evidence* that Foremost intended to relinquish its affirmative defense, none of Foremost's conduct demonstrated waiver.

In *Velasquez*, the insured building owners challenged a summary judgment ruling in which the court found the action barred by the one-year limitation clause of their policy. In upholding the judgment the Court of Appeal, Second Appellate District,

13

Division Four, noted that the disputed policy provision was a term approved by the Legislature in Insurance Code section 2071 (section 2071), which sets forth standard language for a fire insurance policy. In rejecting the insureds' claim of waiver, the court remarked that their argument "suggests that their understanding of Farmers's conduct, rather than evidence of Farmers's actual intent, is sufficient to show waiver. This is not the law." (*Velasquez*, *supra*, 1 Cal.App.4th at p. 722.)

Even if Gordon's contention is regarded as an assertion of forfeiture rather than intentional conduct amounting to waiver, we cannot agree that Foremost's mere participation in litigation precluded the company's reliance on the appraisal condition. In *Saint Agnes*, *supra*, 31 Cal.4th at p. 1203, the defendant in a medical center's action (PacificCare, a health maintenance organization) had itself initiated a separate lawsuit which did not involve arbitrable causes of action. That separate lawsuit did not constitute a waiver of PacifiCare's right to seek arbitration. Furthermore, plaintiff Saint Agnes itself, as in the instant case, had "rebuffed PacificCare's informal request and offer to arbitrate before the instant petition to compel arbitration was filed [by PacifiCare]." (*Ibid.*)

In *Saint Agnes* the Supreme Court further emphasized that whether the party opposing arbitration was prejudiced by engaging in litigation "is critical in waiver determinations." (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1203.) Here, Gordon contends that the delay in asserting the appraisal condition prejudiced him "in various ways, including unnecessary expenditures, dissipation of possible appraisal evidence, revelation of his evidence and expert opinions in the discovery process that would not have been available to Foremost in appraisal, and the lapsing of the policy's one-year statute of limitations." However, no evidence in the record supports the bare assertion of "various ways" in which prejudice occurred. The expenditure of court and litigation costs does not suffice to establish prejudice: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration

14

shows only that it incurred court costs and legal expenses." (*Ibid*.)  The bare mention of the statute of limitations serves no purpose toward an inference of prejudice.  Gordon's assertion of prejudice therefore fails to support its premise.[14]

We thus agree with the superior court that Gordon failed to meet his "heavy burden" to establish either waiver of the appraisal prerequisite to suit in paragraph 8 of the policy or prejudice from Foremost's participation in litigation.  (*Saint Agnes*, *supra*, 31 Cal.4th at p. 1195.)  The court did not err in ruling that Foremost had not waived the appraisal condition and that the condition itself could be applied to preclude Gordon's claims.

## 2. *Validity of the Appraisal Prerequisite*

Gordon next renews his contention that paragraph 8 of Larry's policy is invalid.[15] He hastens to acknowledge that paragraph 5, which provides for appraisal, is acceptable; it is only paragraph 8, he insists, that "conflicts with [section] 2071 and is therefore invalid and unenforceable."

Gordon does not cite any authority deeming such provisions invalid; he merely relies on the perceived *absence* of authority allowing such a condition.  Even before 1900, however, courts recognized the validity of such policy terms.  In 1890, for example, the United States Supreme Court upheld an insurance policy provision setting forth the procedure for appraisal in the event of property damage.  The provision stated that "until such an appraisal shall have been permitted, and such an award obtained, the

---

[14] *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman)* does not instruct otherwise.  In that case the appellate court addressed waiver of an arbitration clause in an employment contract.  The employer had petitioned to compel arbitration only two months after the complaint was filed, and its discovery requests did not seek to litigate the merits of arbitrable issues.  Consequently, neither waiver nor prejudice occurred by the employer's mere participation in litigation.

[15] Foremost makes no effort to address this argument; instead, it discusses unconscionability and equitable estoppel, which are not issues on appeal.

loss shall not be payable, and no action shall lie against the company." (*Hamilton v. Liverpool & London & Globe Ins. Co.* (1890) 136 U.S. 242, 254-255.) The high court found such a provision "unquestionably valid." (*Id.* at p. 255.) The insurer in *Hamilton* had requested appraisal "explicitly and repeatedly," but the insured "as often peremptorily refused to do this" unless the insurer acquiesced to conditions outside the scope of its obligations. (*Id.* at p. 256.) The Court held that the trial court had correctly instructed the jury "that the defendant had requested in writing, and the plaintiff had declined, the appraisal provided for in the policy, and that the plaintiff, therefore, could not maintain this action. [¶] If the plaintiff had joined in the appointment of appraisers, and they had acted unlawfully, or had not acted at all, a different question would have been presented." (*Ibid.*)

Our own Supreme Court has long endorsed appraisal prerequisites to suit as well. In *Adams v. South British & National Fire & Marine Ins. Co.* (1886) 70 Cal. 198, the policy at issue provided for appraisal in case of dispute regarding loss or damage. It also provided that " 'no suit or action for the recovery of any claim by virtue of this policy shall be sustained in any court until after an award shall have been demanded and obtained, fixing the amount of such claim in the manner above provided.' " (*Id.* at p. 201.) Relying on an even older decision, the Supreme Court held that the trial court had improperly refused to instruct the jury that the action could not be maintained because no arbitration or award had been obtained. (See *Old Saucelito Land & Dry-Dock Co. v. Commercial Union Assur. Co.* (1884) 66 Cal. 253, 259 [without resolution of dispute by arbitration, or the insured's "fair effort" to obtain such "adjustment," no cause of action arose]; but see *Case v. Insurance Co.* (1889) 82 Cal. 263, 268, 270 (*Case*) [without specification of number and mode of selecting appraisers, appraisal provision was "too vague and indefinite to be allowed any validity," distinguishing *Adams* and *Old Saucelito*]; see also *Winchester v. North British & Mercantile Ins. Co. of London and Edinburgh* (1911) 160 Cal. 1, 7 [citing *Case* for the point that an appraisal provision is

16

not a condition precedent to plaintiff's right of action, unless insurer has demanded appraisal]; cf. *Platt Pacific*, *supra*, 6 Cal.4th at p. 321 [unexcused failure to comply with contract term requiring arbitration demand within specified period precludes judicial enforcement of term].)

The provision at issue here echoes the language of section 2071. That statute sets forth the "standard form of fire insurance policy for this state."[16] Among its provisions is a description of the appraisal process in the event of disagreement on the amount of loss—a term adopted (with clearer language) in Foremost's paragraph 5—as well as the following condition on legal action: " 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.' " As noted in *Alexander v. Farmers Ins. Co. Inc.* (2013) 219 Cal.App.4th 1183, 1187 (*Alexander*), California Code of Regulations, title 10, section 2695.9, subdivision (e), states: "[o]nce the appraisal provision under an insurance policy is invoked, the appraisal process shall not include any legal proceeding or procedure not specified under California Insurance Code Section 2071. Nothing herein is intended to preclude separate legal proceedings on issues unrelated to the appraisal process." Clearly the Legislature and the Insurance Commissioner have sanctioned policy terms requiring the appraisal process as a prerequisite to the filing of a complaint in court.

Gordon protests, however, that the policy provision requires—"plainly contrary to [section] 2071"—that an appraisal *award* have been issued before an action may be brought. Gordon overstates the appraisal language in paragraph 8; he suggests not only that the policyholder must *initiate* the process but also that appraisal is mandatory even if it is inappropriate, such as when the main dispute relates to causation or coverage.

---

[16] Neither party contends that section 2071 is inapposite in this case, where wind rather than fire caused the damage to Larry's home.

Paragraph 8 demands neither of these circumstances. The appraisal procedure of paragraph 5 is necessary only if the insurer and insured "have failed to agree on the amount of the loss." That is exactly the circumstance anticipated in the "no suit or action" language of section 2071.

This was not a situation like that of *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 62, where the action could proceed without appraisal because the issues between the parties were outside the scope of an appraiser's duties. Without violating paragraph 8, for example, Larry could have sued for declaratory relief as to the meaning of a statutory or contract provision. (*Ibid.*; cf. *Doan*, *supra*, 195 Cal.App.4th at p. 1094, 1099 [appraisal not exclusive remedy; court has discretion to stay appraisal pending resolution of legal questions]; accord, *Alexander*, *supra*, 219 Cal.App.4th at pp. 1194-1196.) The policy does not provide otherwise. It does not purport to create a bar to lawsuits having nothing to do with the extent of the insured's loss, such as the meaning of a coverage provision; it is plainly premised on the inability of the parties to agree on the amount of loss and contemplates appraisal only to resolve that issue. In any event, Larry's lawsuit was not directed at interpretation of coverage terms or statutes, but was specifically focused on Foremost's failure to pay for repair of the mobile home and its requirement that Larry work with adjusters, agents, and contractors. Consequently, even if paragraph 8 precluded lawsuits outside the purview of an appraiser's function, no prejudice could be derived from its application in the present case.

*Disposition*

The order is affirmed.

18

_____

ELIA, ACTING P.J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

_____

MIHARA, J.

19